**Slip Op. 04-93**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

--------------------------------------------------------------x

NORTH DAKOTA WHEAT COMMISSION,   :
U.S. DURUM GROWERS ASSOCIATION, and
DURUM GROWERS TRADE ACTION   :
COMMITTEE,

        :

      Plaintiffs,

        :

  v.

        :       **Court No. 03-00838**

UNITED STATES,

        :

      Defendant,

        :

and

        :

CANADIAN WHEAT BOARD,

        :

      Defendant-Intervenor.

        :

--------------------------------------------------------------x

[Defendant's Motion to Dismiss is granted.]

Decided: July 29, 2004

*Robins, Kaplan, Miller & Ciresi, LLP (Charles A. Hunnicutt)*, for Plaintiff.

*James M. Lyons,* Acting General Counsel, Office of General Counsel, United States International Trade Commission, *(Michael Diehl)*, Attorney-Advisor, for Defendant.

*Steptoe & Johnson LLP, Richard O. Cunningham, Edward J, Krauland, (Matthew S. Yeo), Tina Potuto Kimble*, for Defendant-Intervenor.

## OPINION

**BARZILAY, JUDGE:** In this case, the court is called upon to decide whether plaintiffs, the

North Dakota Wheat Commission, U.S. Durum Growers Association, and Durum Growers Trade

Action Committee ("plaintiffs") have failed to establish jurisdiction in this court as defendant, the United States International Trade Commission ("Commission"), argues in its motion to dismiss. Specifically, the government argues that the North Dakota Wheat Commission commenced the present action[1] during a time expressly prohibited by section 516a(a)(5) of the Tariff Act of 1930 (19 U.S.C. § 1516a(a)(5)).

## I.    Background

On September 13, 2002, the North Dakota Wheat Commission and the U.S. Durum Growers Association filed a petition with the Department of Commerce ("Commerce") and the Commission alleging that a domestic industry was being materially injured and threatened with material injury by reason of imports of durum wheat from Canada that were being subsidized and sold at less than fair value. In October, 2002, Commerce initiated both countervailing duty and antidumping investigations of certain hard red spring and durum wheat from Canada. Commerce initiated four specific and separate investigations: one countervailing duty and antidumping investigation for each type of wheat. In November 2002, the Commission made a preliminary determination that there was a reasonable indication that an industry in the United States was materially injured by reason of subject imports of durum wheat from Canada. *Durum and Hard Red Spring Wheat from Canada*, Inv. Nos. 701-TA-430A and 430B and 731-TA-1019A and 1019B (Preliminary), USITC Pub. 3563 (Dec. 2002). Commerce subsequently made a final affirmative determination in all four investigations. 68 Fed. Reg. 52,747 (Sept. 5, 2003) (final

---

[1] The petition was originally filed by the North Dakota Wheat Commission and the U.S. Durum Growers Association. The Durum Growers Trade Action Committee was added as a petitioner by amendment.

CVD determination), 68 Fed. Reg. 52741 (Sept. 5, 2003) (final less than fair value

determination).  On October 23, 2003, the Commission issued its final determination, finding

that the domestic industry was being materially injured by subsidized imports from Canada of

hard red spring wheat, but was not being materially injured or threatened with material injury by

subsidized imports of durum wheat from Canada.  *Durum and Hard Red Spring Wheat from*

*Canada*, 68 Fed. Reg. 6,070 (Oct. 23, 2003); *Durum and Hard Red Spring Wheat from Canada*,

Inv. Nos. 701-TA-430A and 430B and 731-TA-1019A and 1019B (Final), USITC Pub. 3639

(Oct. 2003).  Twenty-nine days later, on November 21, 2003, plaintiffs filed a summons with the

court, challenging the Commission's determination and commencing the instant litigation.

Pursuant to USCIT R. 12(b)(1), defendant moves to dismiss for lack of subject matter

jurisdiction, arguing that plaintiffs commenced the present action during a time expressly

prohibited by 19 U.S.C. § 1516a(a)(5)[2].  Specifically, defendant argues that section 1516a(a)(5)

creates a 30 day "time window" within which a party must file a summons seeking judicial

review of a Commission determination involving imports from a free trade area country.

---

[2] Section 1516a(a)(5) states
(a) Review of determination . . .
    (5) Time limits in cases involving merchandise from free trade area countries.

    Notwithstanding any other provision of this subsection, in the case of a determination to which the provisions of subsection (g) apply, an action under this subsection shall not begin to run, until the day specified in whichever of the following subparagraphs applies:

        (A) For a determination described in paragraph (1)(B) or clause (i), (ii) [negative final determinations by the Commission], or (iii) of paragraph (2)(B), the 31st day after the date on which notice of the determination is published in the Federal Register.

Defendant further contends that this "window" opens on the 31st day after publication of the Commission's order in the Federal Register and closes on the 60th day after publication. Thus, commencement of judicial review is prohibited up to the 31st day. Because the plaintiffs commenced this action on November 21, 2003, defendant argues, it was commenced before the time window for doing so began and therefore within the prohibited period.

Plaintiffs respond by arguing that the court should be guided in its interpretation of section 1516a(a)(5) by this Court's recent decision in *Bhullar v. United States*, 27 CIT __, 259 F. Supp. 2d 1332 (2003), *aff'd* 2004 U.S. App. LEXIS 3995 (March 2, 2004) (UNPUBLISHED)[3]. Plaintiffs argue that according to this Court's decision in *Bhullar*, a summons must be filed within 31 days after notice is published in the Federal Register. Plaintiffs further argue that the Commission, in *Bhullar*, argued that a plaintiff was required to commence an action no later than 31 days after notice of the antidumping or countervailing duty determination is published in the Federal Register.[4] Plaintiffs contend that this Court granted the Commission "deference" when it ruled that plaintiffs are required to timely commence an action under section 1516a(a)(5) within 31 days after publication of the notice in the Federal Register, and that they followed the Commission's "clearly stated interpretation of the statute" by filing within that period.

_____

[3] Plaintiffs, throughout their briefs in this matter, repeatedly fail to indicate that the Federal Circuit's opinion affirming *Bhullar* was issued as unpublished, and thus may not be cited as precedent. To the contrary, plaintiffs consistently cite to this opinion as controlling precedent in this case.

[4] Plaintiffs submit to the court, attached to their brief in opposition to defendant's motion to dismiss, a copy of the briefs in the *Bhullar* case. What the Commission argued in *Bhullar* is irrelevant to this case, and, in any event, the government is free to change its opinion regarding the interpretation of laws and to mend in subsequent proceedings any mistakes previously made.

Plaintiffs argue in the alternative that according to the language of the statute, because neither the United States nor Canada had standing to request binational panel review of the Commission's negative determination, 19 U.S.C. § 1516a(g)[5] does not apply and therefore, section 1516a(a)(5)(A) is inapplicable. Instead, plaintiffs argue, section 1516a(a)(2)[6], which requires commencement of an action within 30 days after publication in the Federal Register, is controlling.

Finally, plaintiffs argue that should the court find that section 1516a(a)(5)(A) applies and prohibits commencement of an action during the first 30 days after publication in the Federal Register, the court should apply the principle of equitable tolling in this instance.

## II.     Analysis

## A.     Statute

Section 1516a(a) of Title 19 provides for judicial review of Commission determinations in countervailing duty and antidumping duty proceedings. 19 U.S.C. § 1516a(a). For cases

---

[5] 19 U.S.C. § 1516a(g) states

(g) Review of countervailing duty and antidumping duty determinations involving free trade area country merchandise.
  (1) Definition of determination. For purposes of this subsection, the term "determination" means a determination described in--
      (A) paragraph (1)(B) of subsection (a), or
      (B) clause (i), (ii), (iii), or (vi) of paragraph (2)(B) of subsection (a),
      if made in connection with a proceeding regarding a class or kind of free trade area country merchandise, as determined by the administering authority.

[6] 19 U.S.C. § 1516a(a)(2) states

(2) Review of determinations on record.
  (A) In general. Within thirty days after--
      (i) the date of publication in the Federal Register of– . . .
      (II) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B). . .

involving merchandise from free trade area countries, as in this case, subsection (5) prescribes a time limit for commencing an action in the Court of International Trade.

> (5) Time limits in cases involving merchandise from free trade area countries. Notwithstanding any other provision of this subsection, in the case of a determination to which the provisions of subsection (g) apply, an action under this subsection may not be commenced, and the time limits for commencing an action under this subsection shall not begin to run, until the day specified in whichever of the following subparagraphs applies: . . .
>> (A) For a determination described in paragraph (1)(B) or clause (i), (ii) [negative final determinations by the Commission] or (iii) of paragraph (2)(B), the 31st day after the date on which notice of the determination is published in the Federal Register.

19 U.S.C. § 1516a(a)(5)(A). As plaintiffs point out, section 1516a(a) is predicated on the applicability of subsection (g). Subsection (g) applies to the review of countervailing duty and antidumping duty determinations involving free trade area merchandise, and provides for exclusive review of determinations by binational panels – if binational panel review is requested pursuant to article 1904 of the North American Free Trade Agreement ("NAFTA"), with certain exceptions not relevant here. 19 U.S.C. § 1516a(g). Subsection (g) provides for binational panel review where it has been requested, but does not, as plaintiffs assert, require that it be requested in order for subsection (a)(5) to apply. Moreover, discussing this same provision in the U.S.-Canada Free Trade Agreement – NAFTA's predecessor – the Senate report on the implementing legislation noted that

> the Agreement provides that . . . judicial review may not be commenced until the time for requesting a panel under the Agreement has expired. To preclude this possibility, section 401(a) amends section 516a(a) by adding a new paragraph (5) that prohibits the commencing of an action under section 1516a(a) *until* the 31st day after publication of the appropriate notice in the Federal Register . . . Thus, the normal 30-day period for filing a summons (and 30 days thereafter, a complaint) would *begin* to run on such 31st day.

S. REP. NO. 100-509, at 33-34 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2395, 2428 (emphasis added).  Thus, the statute lays out a series of steps that may be taken with respect to review of a Commission determination.  Under this scheme, commencement of an action in the Court of International Trade is precluded until the time to request a binational panel has expired.  Specifically, NAFTA parties agreed to replace judicial review of certain determinations with binational panel review where binational panel review has been requested.  A request for binational panel review must be made within 30 days following the date of publication of the final determination which, in the United States, refers to publication of the Commission's determination in the Federal Register.  *See* NAFTA Art. 1904:4; 19 U.S.C. § 1516a(g)(2).  Thus, the United States agreed to "amend its statutes or regulations to ensure that . . . domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel . . . has expired."  *See* NAFTA Art. 1904:15(c).  Therefore, as section 1516a(a)(5) indicates, time limits for commencing an action in the Court of International Trade shall not begin to run until the 31st day after the date of publication in the Federal Register of notice of the final determination.  NAFTA Annex 1904.15, U.S. Schedule at ¶ 9.  The statutory scheme contains no requirement that the parties actually invoke binational panel review and none has been cited to the court from other sources.

Thus, because the instant action concerns review of countervailing duty and antidumping duty determinations involving free trade area merchandise, namely Canadian wheat products, subsection (g) applies.[7]  Therefore, section 1516a(a)(5) applies as well.  According to the facts at

---

[7] Because the court finds that subsection (g) is applicable to the facts at hand, plaintiff's alternative argument that section 1516a(a)(2) controls does not apply.

hand, notice of the Commission's determination was published in the Federal Register on October 23, 2003. 68 Fed. Reg. 60,707 (Oct. 23, 2003). Under the statute, commencement of an action in the Court of International Trade was prohibited and the time limits for commencing an action did not begin to run until the 31st day after the date on which notice of the determination was published in the Federal Register. In this case, that date would have been November 23, 2003, which fell on a Sunday. Thus, the earliest day plaintiffs could have filed was November 24, 2003. *See* USCIT R. 6(a). The North Dakota Wheat Commission filed its summons commencing the present action on November 21, 2003, on the 29th day after publication in the Federal Register. 28 U.S.C. § 2632(c); 19 U.S.C. § 1516a(a)(2); USCIT R. 3. Therefore, the action was commenced during the prohibited period.

**B.      Case law**

Plaintiffs point to this Court's recent decision in *Bhullar* in support of the proposition that they had until the 31st day after publication in the Federal Register to commence this action – rather than being precluded from commencing until the 31st day after publication. 259 F. Supp. 2d at 1332. In *Bhullar*, a *pro se* plaintiff filed a complaint in the Court of International Trade over four months after publication of the Commission's final antidumping and countervailing duty determinations in the Federal Register. The government moved to dismiss for lack of jurisdiction on several grounds, including standing, untimeliness, and the fact that a binational panel review was pending. This Court held that in addition to lacking standing to bring the action, the plaintiff failed to meet the statutory timeliness requirements, and also that a NAFTA binational panel had exclusive review of the determinations in that case. On the

timeliness issue, this Court held that filing a summons and complaint four months after publication in the Federal Register is prohibited by section 1516a. This holding is consistent with the court's present interpretation of section 1516a(a)(5). That the Commission took a different position in its briefs before this court in *Bhullar* – an entirely unrelated action predicated on facts entirely distinct from those presently at bar, is of no consequence. The government, like all other parties that come before this Court, is free to change its position on its interpretation of the law, and is also able to correct its past mistakes.[8] In affirming this Court's dismissal of the Plaintiff's case in *Bhullar*, the Court of Appeals for the Federal Circuit, in an unpublished and nonprecedential opinion, held that this Court correctly dismissed because the complaint could not lie after invocation of the binational NAFTA review process. 2004 U.S. App. LEXIS 3995 at 4. It specifically did not address the other grounds raised by the government, including timeliness. *Id.* ("Because the complaint cannot lie after invocation of the binational NAFTA review process, we need not recite other grounds, namely timeliness. . .").

Plaintiffs further argue that this Court in *Bhullar* granted the Commission deference in interpreting a statute that it administers and therefore, they (plaintiffs) should be able to rely on the Commission's erroneous prior interpretation of section 1516a(a)(5) that an action must be

---

[8] The government, in its Reply Brief, states that in making its argument that the summons was untimely in the *Bhullar* case, the Commission's counsel inadvertently truncated the language of 19 U.S.C. § 1516a(a)(5), and the mistake was carried through papers in that case subsequently filed with this Court and the Federal Circuit. *Deft.'s Reply to Pl.'s Resp. in Opp. to Deft.'s Mot. to Dismiss*, 10. Pointing out that although there was no advantage gained by that mistake because even under the correct statutory language the Plaintiff's summons was still very untimely, the Commission's attorney in that case and the International Trade Commission General Counsel's Office indicate that they take responsibility for and sincerely regret the oversight. *Id.*

commenced within 31 days after publication in the Federal Register.  To dismiss this action in light of *Bhullar*, plaintiffs argue, would be "extraordinarily prejudicial," as it would apply a new and different interpretation of the statute in question.  To the contrary, where a statute is clear on its face, the Court does not give deference to the agency's interpretation.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984).  This Court, in *Bhullar*, held that commencement of an action over four months after publication in the Federal Register is untimely.  259 F. Supp. 2d at 1342.  In doing so, however, this Court, apparently relying on government counsel's erroneous guidance, miscited the statute and stated that "[p]ursuant to § 1516a(a)(5)(A), Plaintiff is required to file its summons and complaint within 31 days after the publication in the Federal Register of the final determinations of which Plaintiff seeks review."  259 F. Supp. 2d at 1342.   Plaintiffs claim to have relied on this erroneous statement to their detriment in timing their filing of the instant case.  This is truly unfortunate.  However, the government's previous contrary arguments before this Court notwithstanding, the statute is clear on its face, and the court must be guided by its plain meaning.

**C.      Equity**

Plaintiffs argue that if the court does not deny the government's motion to dismiss based on the statute or case law, it should apply the doctrine of equitable tolling and allow the case to go forward.  When looking to apply equitable principles in suits against the government, the court must begin with the fundamental maxim that as a sovereign the United States is immune from legal action in the courts except to the extent that it waives such immunity.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Furthermore, a waiver of sovereign immunity "'cannot be

implied but must be unequivocally expressed'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4

(1969)). The Supreme Court has held that the same rebuttable presumption of equitable tolling

applicable to suits against private defendants should also apply to suits against the United States.

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). Thus, per *Irwin*, the court must

inquire into the language of the statute to ascertain whether Congress intended the equitable

tolling doctrine to apply. *See Irwin*, 498 U.S. at 95-96; *see also, e.g. United States v. Brockamp*,

519 U.S. 347, 353 (1997) (analyzing the language of statutory time limitations, comparing

"ordinary limitations statutes," which use fairly simple language that can plausibly read as

containing an implied equitable tolling exception, with "highly detailed technical ones," that

cannot easily be read as containing implicit exceptions).

As discussed above, section 1516a explicitly prohibits the commencement of an action in

the Court of International Trade during the 30 days following publication of the Commission's

final determinations in the Federal Register. It states that

> an action under this subsection may not be commenced, and the time limits for
> commencing an action under this subsection shall not begin to run, until . . . the
> 31st day after the date on which notice of the determination is published in the
> Federal Register.

19 U.S.C. § 1516a(a)(5)(A). Moreover, Congress purposefully amended relevant statutes and

regulations to ensure that domestic procedures for judicial review of a final determination may

not be commenced until the time for requesting a panel has expired. *See* NAFTA Art.

1904(15)(c), (i). As also discussed above, the 30 day period corresponds directly to time limits

under NAFTA for binational panel review that this court has no ability to alter. Thus, to read an

equitable tolling provision into the statute would potentially imply an exception for tolling in

virtually all time limitations throughout the statute, as well as in the NAFTA regulations – a kind of tolling for which the court has found no precedent. *Cf. Brockamp*, 519 U.S. at 353 (holding that a statute's technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute).

Furthermore, *Irwin* makes clear that equitable tolling is extended "only sparingly," and where "the complainant has been induced or tricked by his adversary's misconduct. . ." 498 U.S. at 96; *see also Frazer v. United States*, 288 F.3d 1347, 1353-54 (2002) ("equitable tolling is available only when the lateness is attributable, at least in part, to misleading governmental action"). Plaintiffs characterize the Commission's arguments in *Bhullar*, that a summons and complaint must be filed within 31 days after publication in the Federal Register, as the agency's interpretation of section 1516a. Although they argue that the Commission failed to timely notify the Court of its mistake in interpreting the statute, plaintiffs do not indicate that they had been induced to file their summons on the 29th day after publication by any trickery or government misconduct. Furthermore, there is no support for the proposition that the government's misreading of the statute and argument in one case constitute trickery or misconduct to plaintiffs – parties in a case entirely unrelated to the lawsuit in question.

Finally, plaintiffs fail to establish that they acted diligently. *Cf. Former Employees of Sonoco Products Co. v. Elaine Chao*, 27 CIT __, 273 F. Supp. 2d 1336, 1341 (2003) (requiring a party seeking to apply the doctrine of equitable tolling to show that it exercised due diligence in

preserving its legal rights), *aff'd*, 2004 U.S. App. LEXIS 12071. Courts have found due diligence where a party made reasonable and sustained attempts to resolve questions or ambiguities and reasonably attempted to comply with the statutory time limits. *See Former Employees of Quality Fabricating, Inc. v. United States Sec. of Labor*, 27 CIT __, 259 F. Supp. 2d 1282, 1286 (2003). There is no indication that plaintiffs attempted to resolve any apparent discrepancy between the clearly stated statutory time limits and the contradictory language in *Bhullar*. Neither is there any indication of any communication between plaintiffs and the Commission regarding the statutory language. Furthermore, plaintiffs, being represented by able counsel, are aware that where a statute is unambiguous on its face, it is controlling. Thus, the court is unable to apply the principle of equitable tolling in this instance and to establish a new interpretation of section 1516a(a)(5)(A) for future actions, as plaintiffs request.

## III.    Conclusion

For the foregoing reasons, the International Trade Commission's motion to dismiss is hereby GRANTED.


Dated: __July 29, 2004_____                          ____/s/ Judith M. Barzilay_____
　　　　 New York, NY                                        Judith M. Barzilay
　　　　　　　　　　　　　　　　　　　　　　　　　　　 Judge