**Slip Op. 05-52**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DESERT GLORY, LTD., | : |
| *Plaintiff*, | : |
| v. | : |
| UNITED STATES OF AMERICA, | : |
| *Defendant*, | : |
| and | : |
| | Court No. 03-00044 |
| CAADES SINALOA, A.C., CONSEJO | : |
| AGRICOLA DE BAJA CALIFORNIA, A.C., | |
| ASOCIACION MEXICANA DE | : |
| PRODUCTORES DE HORTALIZAS DE | |
| INVERNADERO, A.C., UNION AGRICOLA | : |
| REGIONAL DE PRODUCTORES DE | |
| HORTALIZAS DE SONORA, and | : |
| CONFEDERACION NACIONAL DE | |
| PRODUCTORES DE HORTALIZAS, | : |
| *Defendant-Intervenors*. | : |

[Defendant's motion to dismiss for lack of subject matter jurisdiction granted.]

Decided: April 27, 2005

Miller & Chevalier Chartered (Matthew M. Nolan, Myles S. Getlan, Karl W. Abendschein, and Alexander D. Chinoy), for Plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Kent G. Huntington); Augusto Guerra, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

Shearman & Sterling LLP (Thomas B. Wilner and Christopher M. Ryan), for Defendant-Intervenors.

**OPINION**

RIDGWAY, Judge:

In this action, plaintiff Desert Glory, Ltd. – a Mexican producer and exporter, and a U.S. importer, of cocktail tomatoes – seeks to contest a December 2002 "scope determination" by the U.S. Department of Commerce, in which Commerce ruled that cocktail tomatoes are covered by the pending antidumping investigation of fresh tomatoes from Mexico initiated in 1996.

The Government has moved to dismiss the case,[1] asserting that the court lacks subject matter jurisdiction because Desert Glory failed to give the timely notice of intent to commence judicial review required under the North American Free Trade Agreement ("NAFTA") and the NAFTA Implementation Act. *See generally* Defendant's Memorandum in Support of Its Motion to Dismiss ("Def.'s Brief"); Defendant's Reply to Plaintiff's Opposition to [Defendant's] Motion to Dismiss ("Def.'s Reply Brief"); 19 U.S.C. § 1516a (2000).[2]

For the reasons discussed below, the Government's motion is granted, and this action is dismissed.

## I. Standard of Review

As the party seeking to invoke the jurisdiction of the Court of International Trade, Desert Glory bears the burden of pleading and proving the requisite bases. *See* Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT ____, ____, 273 F. Supp. 2d 1336, 1338

---

[1]Defendant-Intervenors took no part in the briefing and argument on the Government's motion to dismiss.

[2]Unless otherwise noted, all references to the United States Code are to the 2000 edition.

(2003) (*citing* <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936)), *aff'd sub nom.*
<u>Former Employees of Sonoco Prods. Co. v. Chao</u>, 372 F.3d 1291 (Fed. Cir. 2004). Where – as here
– a waiver of sovereign immunity is at issue, the language of the statute must be strictly construed,
and any ambiguities must be resolved in favor of immunity. *See* <u>United States v. Williams</u>, 514 U.S.
527, 531 (1995); <u>RHI Holdings, Inc. v. United States</u>, 142 F.3d 1459, 1461 (Fed. Cir. 1998) ("Any
statute which creates a waiver of sovereign immunity must be strictly construed in favor of the
Government.").

## II. **Summary of the Facts of the Case**

This case has its roots in the antidumping investigation concerning fresh tomatoes from
Mexico, initiated by Commerce more than eight years ago, in April 1996. Initially, cocktail tomatoes
were specifically and expressly excluded from the scope of that investigation. Before a final
determination was reached in the investigation, it was halted by a 1996 suspension agreement
between Commerce and certain Mexican tomato producers and exporters.[3] Six years later, after
Mexican producers and exporters accounting for a large percentage of U.S. imports withdrew from
the 1996 suspension agreement, Commerce was forced to terminate it, and the investigation was re-
opened. But, before reaching a final determination in the reopened investigation, Commerce

---

[3]Commerce is authorized to enter into such agreements where, *inter alia*, "exporters of the
subject merchandise who account for substantially all of the imports of that merchandise" agree to
measures that "eliminate completely the injurious effect" of the imports. 19 U.S.C. § 1673c(c). *See
generally* <u>San Vicente Camalu SPR de RI and Expo Fresh, LLC v. United States</u>, 29 CIT ____, 2005
WL 894816 (2005) (providing background information on 1996 and 2002 suspension agreements
in antidumping investigation of Fresh Tomatoes from Mexico, and overview of suspension
agreements generally).

"clarified" the scope of the investigation, to include cocktail tomatoes. The investigation was then halted once again, by a 2002 suspension agreement, which Commerce signed on the same day it issued the Scope Determination (and which remains in force today). *See* <u>Notice of Suspension of Antidumping Investigation on Fresh Tomatoes from Mexico</u>, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) ("2002 Suspension Agreement") (incorporating by reference Memorandum to Faryar Shirzad re: "Antidumping Duty Investigation on Fresh Tomatoes from Mexico: Scope Clarification" (Dec. 4, 2002) ("Scope Determination")); <u>Notice of Termination of Suspension Agreement, Termination of Sunset Review, and Resumption of Antidumping Investigation: Fresh Tomatoes from Mexico</u>, 67 Fed. Reg. 50,858 (Dep't Commerce Aug. 6, 2002).

This action ensued, seeking to contest – in the words of Desert Glory – Commerce's "determination . . . to include cocktail tomatoes in the scope of [the] 2002 agreement suspending the antidumping investigation on tomatoes from Mexico, notwithstanding the Department's six-year practice of excluding cocktail tomatoes from the scope of that investigation." Plaintiff's Brief in Opposition to the Defendant's Motion to Dismiss ("Pl.'s Response Brief") at 1 (footnote omitted).[4]

--------

[4]In its Complaint, Desert Glory challenged both Commerce's Scope Determination and the 2002 Suspension Agreement. *Compare* Complaint, Claim I (Scope Determination) *with* Claims II-III (Suspension Agreement). However, Desert Glory's challenge to the Suspension Agreement has fallen by the wayside in the course of litigation. *See*, *e.g.*, Pl.'s Response Brief at 1 n.1 ("The [a]dministrative determination at issue is [Commerce's] scope decision"), 2 ("Desert Glory filed a summons and complaint . . . challenging the Scope Determination"), 6 n.3 ("Plaintiff has challenged [Commerce's] Scope Determination"); Transcript of Oral Argument ("Tr.") at 29-31 (counsel explains that Desert Glory is "anxious for the Court to hear the merits of [its] claim" that "the Commerce Department ha[s] rewritten the scope of the tomato[es] anti-dumping proceeding to include merchandise that had been excluded [for] six years," and – with reference to exchange at Tr. 22-24 – confirms that Desert Glory is now challenging only the Scope Determination). *See also* Plaintiff's Brief in Support of its Motion for Judgment Upon the Agency Record at 1 (stating that this proceeding "contests the decision of the Department of Commerce . . . to redefine the scope of

Invoking jurisdiction under 28 U.S.C. § 1581(c), Desert Glory filed its Summons and Complaint with the court on January 28, 2003 – 55 days after Commerce issued its Scope Determination, and 43 days after Federal Register publication of notice of the 2002 Suspension Agreement (which notice incorporated by reference the Scope Determination). There was no prior notice of Desert Glory's intent to commence these proceedings.

### III. Summary of the Applicable Law

Both the United States and Mexico are parties to the North American Free Trade Agreement ("NAFTA"). Under NAFTA and the NAFTA implementing legislation, in cases involving antidumping determinations such as the Scope Determination here at issue, interested parties have a period of 30 days following receipt of the determination by the country whose imports are subject to the investigation in which to decide whether to seek review before a NAFTA binational panel.[5]

---

the antidumping proceedings concerning fresh tomatoes from Mexico to include cocktail tomatoes"), *passim*.

Desert Glory's challenges to the 2002 Suspension Agreement were, in any event, untimely. As discussed in section III below, the time for seeking judicial review of the Scope Determination was tolled for the 30-day period during which parties could seek binational panel review of that determination. In contrast, the statute does not toll the time for seeking judicial review of a suspension agreement. Desert Glory's failure to file its Summons within 30 days after Federal Register publication of the Suspension Agreement on December 16, 2002 thus deprived this Court of subject matter jurisdiction over its challenges to that agreement. *See generally* Def.'s Brief at 8-10; Tr. at 22-24.

The 2002 Suspension Agreement is being challenged in another case pending before the Court, however. *See* San Vicente Camalu SPR de RI v. United States, No. 02-00811 (CIT filed Dec. 17, 2002).

[5]*See* 19 U.S.C. § 1516a(g)(8); NAFTA Art. 1904:4. Under 19 U.S.C. § 1516a(g)(2), binational panel review is the exclusive remedy, if such review is requested. *See* NAFTA Art.

During that 30-day period, parties are prohibited from seeking judicial review, and the statutory time limits for seeking judicial review are tolled.[6] If a binational panel is not requested within the 30-day period, a plaintiff may seek judicial review – provided that timely notice of its intent to do so has been given to all parties concerned, as required under the "special rule" set forth in 19 U.S.C. § 1516a(g)(3)(B).[7] Such notice of intent is timely if given within 20 days of a specific date described in 19 U.S.C. § 1516a(a)(5). *See also* NAFTA Art. 1904:15(c)(ii) (requiring delivery of notice of intent to commence judicial review at least 10 days before deadline for requesting binational panel).

## IV. Analysis

The Government here contends that Desert Glory was required to give notice of its intent to commence judicial review no later than 20 days after Mexico's receipt of notice of the Scope Determination. *See*, *e.g.*, Def.'s Reply Brief at 5-9. In contrast, Desert Glory maintains that the 20-day period for giving notice of intent to commence judicial review did not even begin to run until

---

1904:11 (prohibiting domestic judicial review if binational panel is requested). Review in the Court of International Trade is available only if a binational panel is not requested. 19 U.S.C. § 1516a(g)(3)(A)(i); *see also* NAFTA Art. 1904:12 (binational panel review not exclusive if such review is not requested).

[6]*See* 19 U.S.C. § 1516a(a)(5) ("an action [challenging a scope determination] may not be commenced . . . until . . . the 31st day after the date on which the government of the relevant FTA country receives notice of the determination"); NAFTA Art. 1904:15(c)(i) ("domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel . . . has expired").

[7]*See* 19 U.S.C. § 1516a(g)(3) (permitting judicial review if a binational panel has not been requested and timely notice of intent to commence judicial review has been given); NAFTA Art. 1904:15(c) (same).

much later – after the 30-day period for seeking review before a NAFTA binational panel had expired.  Desert Glory thus asserts that notice was timely if delivered between the thirty-first and fiftieth days after Mexico learned of the Scope Determination.  *See* Pl.'s Response Brief at 2, 7-9.

In essence, the parties' dispute boils down to whether or not the 20-day period for giving notice of intent to commence judicial review runs concurrently with the 30-day period for seeking review before a NAFTA binational panel – a question which turns on how three provisions of  19 U.S.C. § 1516a interrelate to define the start date of the 20-day period.

As discussed in greater detail below, the language of the statute, its purpose (as reflected in the legislative history), and the relevant case law all support the position of the Government here.  Desert Glory was obligated to give notice of its intent to commence judicial review within 20 days of Mexico's receipt of notice of the Scope Determination.

### A.  <u>The Language of the Statute</u>

The plain language of the three relevant provisions of 19 U.S.C. § 1516a clearly fixes the date of receipt of notice of the Scope Determination as the date on which the 20-day period begins to run.

The first of the three relevant provisions is the "special rule" governing notice of  intent to commence judicial review, which is codified at 19 U.S.C. § 1516a(g)(3)(B).  The "special rule" requires that a party intending to seek judicial review of a determination such as the Scope Determination at issue in this case give notice of that intent in a timely manner – that is, within 20 days of a specific *date* described elsewhere:

(B) Special rule

A determination . . . is reviewable under subsection (a) of this section only if the party seeking to commence review has provided timely notice of its intent to commence such review to —

(i) the United States Secretary and the relevant FTA [Free Trade Area] Secretary;[8]

(ii) all interested parties who were parties to the proceeding in connection with which the matter arises; and

(iii) [Commerce] or the [International Trade] Commission, as appropriate.

Such notice is timely provided if the notice is delivered no later than the date that is 20 days after the *date* described in subparagraph . . . (B) of subsection (a)(5) of this section . . . .

19 U.S.C. § 1516a(g)(3)(B) (emphasis added).

The second relevant provision of § 1516a is the "tolling provision," in subsection (a)(5). In effect, the tolling provision prohibits parties from seeking judicial review of a determination such as the Scope Determination here until a particular *day* specified in the third provision – the "timing provision." The timing provision, found in subsection (a)(5)(B) of § 1516a, specifies both the *day* referenced in the tolling provision (*i.e.*, the first day of the period during which a party may commence an action in the Court of International Trade) and the *date* referenced in the "special rule" (*i.e.*, the date that begins the 20-day period for giving notice of intent to commence judicial review):

---

[8]The U.S. Secretary and the FTA Secretaries are officials from the three NAFTA countries – the United States, Canada, and Mexico – who provide administrative assistance to facilitate the work of panels and committees in NAFTA dispute settlement proceedings. *See* 19 U.S.C. §§ 1516a(f)(6)-(7); NAFTA Art. 1908.

(5) Time limits in cases involving merchandise from free trade area countries

Notwithstanding any other provision of this subsection, in the case of a determination to which the provisions of subsection (g) of this section apply, an action under this subsection may not be commenced, and the time limits for commencing an action under this subsection shall not begin to run, until the *day* specified in whichever of the following subparagraphs [(A) or (B) of subsection (a)(5)] applies:

. . . .

(B) For a [scope] determination . . ., the 31st *day* after the *date* on which the government of the relevant FTA country receives notice of the determination.

19 U.S.C. § 1516a(a)(5) (emphasis added).

Whether Desert Glory complied with the "special rule" depends on what "the *date* described in" the timing provision is. The Government asserts that, in this case, "the *date* described in" the timing provision is the date on which Mexico received notice of the Scope Determination. Desert Glory claims it is 30 days later. *See, e.g.*, Def.'s Reply Brief at 6-7; Pl.'s Response Brief at 4-8.

As discussed in section I above, the language of the statute must be strictly construed. Here, a strict reading of the statute leaves no doubt that the 20-day period for giving notice of intent to commence judicial review of a scope determination begins to run on the date the relevant FTA country receives notice of that determination.

On its face, the timing provision refers *both* to a "date" *and* to a "day." The "date" is "the *date* on which the government of the relevant FTA country receives notice of the determination"; and the "day" is "the 31st *day* after the *date* on which the government of the relevant FTA country receives notice of the determination." 19 U.S.C. § 1516a(a)(5)(B) (emphasis added). The "special

rule" expressly refers *not* to the "day" described in the timing provision but, rather, to the "date"

described therein – that is, to "the *date* on which the government of the relevant FTA country

receives notice of the determination." *See* 19 U.S.C. §§ 1516a(a)(5)(B), (g)(3)(B) (emphasis added).

That *date* thus marks the start of the 20-day period for giving notice of intent to commence judicial

review (as well as the start of the 30-day period during which parties may seek binational panel

review).[9]  *See* 19 U.S.C. § 1516a(g)(8)(A)(i) (providing that period for requesting binational panel

---

[9]Desert Glory insists that – just as the time for seeking judicial review of the Scope Determination was tolled for the 30-day period during which parties could seek binational panel review (*i.e.*, the 30 days following Mexico's receipt of notice of that determination) – so too the 20-day period for giving notice of intent to commence judicial review was also tolled.  *See* Pl.'s Response Brief at 2, 7-8.  But the very language of the tolling provision belies Desert Glory's claim.  *See generally* Def.'s Reply Brief at 4-8.

Under the tolling provision, an action before this Court may not be commenced (and the statutory time limits for filing such an action do not begin to run) until "the *day* specified" in the timing provision.  19 U.S.C. § 1516a(a)(5) (emphasis added).  The "special rule" requires that interested parties receive any notice of intent to commence such an action within 20 days of "the *date* described" in the timing provision.  19 U.S.C. § 1516a(g)(3)(B) (emphasis added).  Plainly, "the *date* described" in the timing provision differs from "the *day* specified" in the timing provision, which uses both terms.  The "*date*" described in the timing provision is "the *date* on which the government of the relevant FTA country receives notice of the determination."  19 U.S.C. § 1516a(a)(5)(B) (emphasis added).  In contrast, the "*day*" specified in the timing provision is "the 31st *day* after the date on which the government of the relevant FTA country receives notice of the determination."  19 U.S.C. § 1516a(a)(5)(B) (emphasis added).  The tolling provision and the "special rule" concerning notice of intent to commence judicial review thus refer to different phrases within the timing provision.  The two are not parallel.

Moreover, Desert Glory's interpretation of the statute would yield patently absurd results.  The statute fixes the start date for the 30-day period within which binational panel review may be requested as "the *date* described" in the timing provision – which is the exact same language used to describe the start date for the 20-day period within which notice of intent to commence judicial review must be given under the "special rule."  *Compare* 19 U.S.C. § 1516a(g)(8)(A)(i) (governing the timing of the filing of requests for binational panel review) *with* 19 U.S.C. § 1516a(g)(3)(B) (the "special rule").  Thus, under Desert Glory's interpretation, the 30-day period for requesting binational panel review would not begin until "the 31st day after the date on which the government

review extends for 30 days from "the date described" in the timing provision – *i.e.*, for 30 days from "the date on which the government of the relevant FTA country receives notice of the determination").

In this case, then, Desert Glory was obligated to give notice of its intent to seek review in this Court to the United States, Mexico, and other interested parties no later than 20 days after the date on which Mexico received notice of the Scope Determination. Even assuming that Mexico's first notice of the Scope Determination was the Federal Register notice of the Suspension Agreement published on December 16, 2002 (as Desert Glory contends),[10] Desert Glory was nevertheless too

_____

of the relevant FTA country receives notice of the determination." As such, the time for requesting binational panel review would coincide exactly with the time for commencing judicial review in this Court. *See* 19 U.S.C. § 1516a(a)(5) (providing that judicial review may be commenced in the 30-day period beginning on "the 31st day after the date on which the government of the relevant FTA country receives notice of the determination"). But a party may seek judicial review of a determination only if the time for requesting a binational panel has expired and no such request has been filed. Thus, Desert Glory's interpretation would have the perverse effect of prohibiting the commencement of an action in this Court during the period allotted for doing so. Under Desert Glory's interpretation of the statute, the option of judicial review in the absence of a request for binational panel review would be entirely illusory. And that just doesn't make sense.

[10]The administrative record filed with the Court is silent as to the date on which Mexico received notice of the Scope Determination. For its part, Desert Glory contends that Mexico learned of the Scope Determination via references to that determination in the Federal Register notice of the Suspension Agreement, which was published December 16, 2002. The Government maintains that Mexico received notice of the Scope Determination (which was issued on December 4) well before the December 16 Federal Register notice. *See, e.g.*, Def.'s Brief at 7-8; Def.'s Reply Brief at 4; Tr. at 5-6, 24.

The parties also disagree as to who properly should have borne the burden of putting on the record the date on which Mexico received notice of the Scope Determination. *Compare* Tr. at 5-6, 12-15 (Government contends that Desert Glory bore the burden) *with* Tr. at 42-44 (Desert Glory takes contrary position). (It is noteworthy that the official NAFTA form, "Notice of Intent to Commence Judicial Review," calls for "the date notice of the final determination was received by the other Party." *See generally* Tr. at 13-15. *See also* 19 U.S.C. § 1516a(g)(10) (stating that

late.  Its Summons and Complaint were filed on January 28, 2003 – a full 43  days after December

16, 2002.[11]

_____

Commerce shall provide the relevant date upon request); 19 C.F.R. § 356.7 (specifying procedure for requesting the relevant date from Commerce).)

In any event, it is unnecessary to resolve these disputes.  Both parties agree that Mexico received notice of the Scope Determination by December 16, 2002, at the latest.  *See* Pl.'s Response Brief at 7-8 & n.5; Def.'s Reply Brief at 4.  And, as discussed above, even calculating from that late date, Desert Glory still cannot prevail.

[11]Just as the parties disagree as to when Mexico received notice of the Scope Determination and who was legally obligated to obtain that date and place it on the administrative record (*see* n.10, *supra*), so too the parties disagree as to whether Desert Glory's Summons and Complaint provided the information required to constitute notice of intent to commence judicial review.  *Compare* Tr. at 12-16, 49-50  *with* Pl.'s Response Brief at 8 n.6; Tr. at 31.  *See generally* 19 U.S.C. § 1516a(g)(3)(B) ("Such notice shall contain such information, and be in such form, manner, and style, as [Commerce], in consultation with the [International Trade] Commission, shall prescribe by regulations."); 19 C.F.R. § 356.3 (providing that notice must follow the form "prescribed by the Article 1904 Panel Rules"); North American Free Trade Agreement: Rules of Procedure for Article 1904 Binational Panel Reviews, 59 Fed. Reg. 8686, 8691, 8694 (Dep't Commerce Feb. 23, 1994) (setting forth, *inter alia*, rules 33 and 55, specifying requirements for proper notice of intent to commence judicial review).

The Government further contends that, even if the Summons and Complaint were to be deemed to satisfy the content requirements for a notice of intent to commence judicial review, Desert Glory nevertheless failed to serve all parties required by the statute.  *See* Def.'s Brief at 7-8; Def.'s Reply Brief at 3-4; Tr. at 13-14, 49-50.  *See generally* 19 U.S.C. § 1516a(g)(3)(B) (requiring delivery of notice to "(i) the United States Secretary and the relevant FTA Secretary; (ii) all interested parties who were parties to the proceeding in connection with which the matter arises; and (iii) [Commerce] or the [International Trade] Commission, as appropriate"); 19 C.F.R. § 356.3 (providing that notice must follow the "service requirements, as prescribed by the Article 1904 Panel Rules"); North American Free Trade Agreement: Rules of Procedure for Article 1904 Binational Panel Reviews, 59 Fed. Reg. at 8691 (setting forth, *inter alia*, rule 33, specifying the parties that must be served with the Notice of Intent to Commence Judicial Review).

As noted above, however, Desert Glory's failure to give *timely* notice obviates the need to reach these other issues.

## B. **Legislative History**

The strict, "plain meaning" reading of the language of the statute (discussed above) is confirmed by the relevant legislative history, which documents the purpose of the "special rule" governing notice of intent to commence judicial review. *See generally* Def.'s Reply Brief at 10-13.[12]

The legislative history of the NAFTA Implementation Act evinces no intent on the part of Congress to alter in any way the operation of the "special rule" governing notice of intent to commence judicial review, which was established under the U.S.-Canada Free Trade Agreement ("CFTA") and the CFTA Implementation Act – the precursors of NAFTA and its implementing legislation – for the express purpose of ensuring that interested parties could make an informed choice of forum. *See* S. Rep. No. 100-509, at 30 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2395,

---

[12]The analysis in section IV.A above reveals no ambiguity in the language of the statute. It may be confusing, at least at first blush; but it is not ambiguous. However, to the extent that *any* argument can be made to the contrary, the legislative history delivers the coup de grace. The legislative history bolsters the position of the Government, and decisively refutes that of Desert Glory. *See* San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n, 161 F.3d 1347, 1352 (Fed. Cir. 1998) ("As is well established in the canons of statutory interpretation, if the statutory language is ambiguous or incomplete, *or may be so perceived*, it is appropriate to ascertain the legislative purpose in enacting the statute, and to implement this purpose in interpreting the statute." (Emphasis added.)).

Of course, where – as here – sovereign immunity is implicated, any ambiguity in the statute would be resolved in favor of the Government in any event. *See* section I, *supra*.

Finally, to the extent that any argument can be made that there are two possible interpretations of the statute, one of which is consistent with the United States' international obligations and one of which is not), the Charming Betsy doctrine is implicated – and, again, weighs in favor of the Government's position here. Pursuant to Charming Betsy, "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118, 2 L. Ed. 208 (1804). *See also* Federal Mogul Corp. v. United States, 63 F.3d 1572, 1581 (Fed. Cir. 1995); Usinor v. United States, 28 CIT ____, ____ n.6, 342 F. Supp. 2d 1267, 1275 n.6 (2004).

2425. Indeed, the history of the NAFTA Implementation Act affirmatively and specifically emphasizes Congress' intent – vis-a-vis NAFTA – to "duplicate[ ], on a trilateral basis, the [relevant] procedures [then] in effect between the United States and Canada under the CFTA":

> Because the binational panel process under the NAFTA is modeled after the CFTA binational panel process, the Committee's report (Senate Report 100-509) accompanying H.R. 5090, the CFTA Act, continues to reflect the Committee's views with respect to those elements of the binational panel process that are carried forward to the NAFTA, where amendments have been made by this Title only to extend the process to goods from NAFTA countries.
>
> . . . .
>
> Chapter 19 [of the NAFTA] largely duplicates, on a trilateral basis, procedures currently in effect between the United States and Canada under the CFTA for binational panel review of final antidumping and countervailing duty determinations . . . . Except for certain innovations introduced in the NAFTA [regarding panelists] . . . , the Statement of Administrative Action accompanying the CFTA Implementing Act, H. Doc. 100-216, 100th Cong., 2d Sess. 258-89 (1988), fully describes the panel system that will be established under the NAFTA.

*See* S. Rep. No. 103-189, at 34, 125-26 (1993).

Desert Glory does not dispute that the CFTA statutory scheme required delivery of notice of intent to commence judicial review no later than 20 days after Canada's receipt of a ruling. *See* Pl.'s Response Brief at 10. The legislative history of the CFTA Implementation Act unequivocally states that such notice is required no later than 20 days after Canada's receipt of a ruling:

> [A] party intending to commence judicial review [in the Court of International Trade] must provide notice [to relevant parties]. . . . This notice must be delivered no later than 20 days after . . . receipt of the ruling by the government of Canada.

Statement of Administrative Action Accompanying CFTA Implementation Act ("CFTA SAA"), H.R. Doc. No. 100-216, at 263 (1988). *See also* S. Rep. No. 100-509, at 30, *reprinted in* 1988 U.S.C.C.A.N. 2395, 2425 ("Notice must be delivered . . . in the case of [scope determinations], no later than 20 days after receipt of the ruling by the Government of Canada.").

That same intent is reflected in the language of NAFTA itself. Like CFTA (discussed above), Article 1904:15(c) of NAFTA expressly provides for the delivery of notice of intent to commence judicial review a minimum of 10 days before the deadline for requesting a binational panel – in other words, a maximum of 20 days after the FTA country's receipt of a ruling such as the Scope Determination here. Specifically, NAFTA Article 1904:15(c) requires that each NAFTA country:

> amend its statutes or regulations to ensure that (i) domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel . . . has expired, and (ii) as a *prerequisite* to commencing domestic judicial review procedures to review a final determination, a Party or other person intending to commence such procedures *shall provide notice of such intent . . . no later than 10 days prior to the latest date on which a panel may be requested.*

NAFTA Article 1904:15(c) (emphasis added)). That NAFTA language mirrors – word-for-word – the language of CFTA. *Compare* NAFTA Art. 1904:15(c)(i)-(ii) *with* CFTA Art. 1904:15(g)(i)-(ii).[13]

---

[13]Desert Glory tries to make much of certain differences between the text of the CFTA and NAFTA versions of 19 U.S.C. § 1516a. *See*, *e.g.*, Pl.'s Response Brief at 9-11. But its argument is not well-founded.

As Desert Glory observes, the NAFTA Implementation Act moved some text (in particular, the phrase "the 31st day after") from the first part of 19 U.S.C. § 1516a(a)(5) into subparagraph (B) of that section. *See* Pl.'s Response Brief at 10. But contrary to Desert Glory's implication, that change was purely structural and had no substantive effect. The same "day" and "date" language appears in both versions of § 1516a(a)(5), and subparagraphs (g)(3)(B) and (g)(8) continue to point to the "date described in" the timing provision as the start date for their respective periods (*i.e.*, the

Indeed, requiring delivery of notice of intent to commence judicial review well before the time for requesting a binational panel expires is essential to fulfilling the purpose of that notice, as set forth in the legislative history – to "allow affected parties *sufficient time to make an informed choice* of forums." CFTA SAA, at 263 (emphasis added). *See also* S. Rep. No. 100-509, at 30, *reprinted in* 1988 U.S.C.C.A.N. 2395, 2425 ("The purpose of the notice requirement is to give interested parties adequate time to request review by a binational panel, *should they prefer that forum for review*.") (emphasis added).

---

20-day period for notice of intent to commence judicial review, and the 30-day period for seeking binational panel review). *Compare* 19 U.S.C. § 1516a (1988) *with* 19 U.S.C. § 1516a (Supp. 1993).

Desert Glory also seeks to invoke legislative history to its own ends. Specifically, Desert Glory points to the history of the statute's tolling provision in an effort to support its interpretation of the special rule governing notice of intent to commence judicial review. *See generally* Pl.'s Response Brief at 12.

Highlighting the legislative history's statement that "as required by [NAFTA] Article 1904, *procedures for commencing judicial review . . .* may not begin until after the period for requesting binational panel review has expired," Desert Glory contends that – like the 30-day period for commencing an action in this Court – the 20-day period for giving notice of intent to commence such an action was also tolled until after the period for requesting binational panel review had expired. *See* Pl.'s Response Brief at 12 (*quoting* Pub. L. 103-182, 107 Stat. 2057, S. Rep. No. 103-189, at 44 (1993)). *See also* n.9, *supra* (discussing, and disposing of, a similar argument). But that argument fails. Contrary to Desert Glory's implication, the notice of intent to commence judicial review is not part of the "procedures for requesting judicial review." Rather, it is a "prerequisite" to such procedures. *See*, *e.g.*, NAFTA Art. 1904:15(c)(ii) (referring to the delivery of such notice as a "*prerequisite* to commencing domestic judicial review procedures") (emphasis added).

(In any event, even if notice of intent to commence judicial review *were* to be considered part of the "procedures for requesting judicial review," the legislative history makes it abundantly clear that judicial review under NAFTA is to be available under the same terms "as under the CFTA." *See*, *e.g.*, S. Rep. No. 103-189, at 44. And, as noted elsewhere above, it is undisputed that CFTA required that notice of intent to commence judicial review be delivered *before* the deadline for requesting a binational panel.)

The 20-day period for giving notice of intent to commence judicial review thus runs concurrently with the 30-day period for requesting binational panel review, to ensure that – if such notice of intent to seek judicial recourse is given – other parties can "make an informed choice of forums" and decide whether to request a binational panel in lieu of allowing judicial review to commence. If – as Desert Glory contends – the 20-day period for notice of intent to commence judicial review instead began to run only *after* the time for requesting a binational panel had expired, the purpose of the "special rule" governing that notice would be not merely frustrated, but utterly defeated. Under Desert Glory's reading, parties interested in avoiding this Court would have no notice of impending judicial proceedings until it was too late to seek binational panel review. *See generally* Def.'s Reply Brief at 10-12. The purpose of the "special rule" is to prevent precisely that sort of "ambush."[14]

## C. Case Law

For Desert Glory, judicial precedent is the final nail in the coffin. The Government relies on two cases as authority for its position – Bhullar v. United States, 27 CIT _____, 259 F. Supp. 2d 1332 (2003), *aff'd*, 93 Fed. Appx. 218 (Fed. Cir. 2004) (affirming solely on the exclusivity of binational panel review), and Feldspar Corp. v. United States, 16 CIT 1067, 809 F. Supp. 971 (1992). *See* Def.'s Brief at 6-8; Def.'s Reply Brief at 3-4, 8.

---

[14]Desert Glory's interpretation of the statute would impermissibly render the "special rule" meaningless. *See* Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249 (1985) (stating that "'a statute should be interpreted so as not to render one part inoperative'") (*quoting* Colautti v. Franklin, 439 U.S. 379, 392 (1979)).

Neither Bhullar nor Feldspar includes a detailed analysis of the relevant portions of 19 U.S.C. § 1516a. But the two cases are, nevertheless, on point. Both quote the language of subsections (a)(5)(A)-(B) and (g)(3)(B) to affirmatively conclude that the 20-day period for notice of intent to commence judicial review runs from the date of Federal Register publication of the ruling at issue. *See* Bhullar, 27 CIT at ____, 259 F. Supp. 2d at 1341; Feldspar, 16 CIT at 1068-69, 809 F. Supp. at 973.[15] And Desert Glory's attempts to dismiss them miss the mark.[16] Moreover, Desert Glory cites to no contrary case law to support its interpretation of the statute. Nor can it do so.

In sum, what little case law exists clearly buttresses the plain meaning of the statute and its legislative history, and supports the Government's position in this action: Desert Glory was required to give notice of its intent to commence judicial review no later than 20 days following Mexico's receipt of notice of the Scope Determination here at issue. Desert Glory's failure to do so deprives the Court of subject matter jurisdiction over its suit.

---

[15]As explained in N. Dakota Wheat Comm'n, Bhullar erroneously stated, in *dicta*, that the plaintiff in that case was "required to file its summons and complaint within 31 days after the publication in the Federal Register of the final determinations" which the plaintiff sought to challenge. *See* N. Dakota Wheat Comm'n v. United States, 28 CIT ____, ____ & n.8, 342 F. Supp. 2d 1319, 1324-25 & n.8 (2004) (*quoting* Bhullar, 27 CIT at ____, 259 F. Supp. 2d at 1342). However, Bhullar's observations concerning 19 U.S.C. § 1516a(g)(3)(B) – the "special rule" governing notice of intent to commence judicial review at issue here – were sound.

[16]Desert Glory rejects Feldspar as "outdated" because it antedated NAFTA. *See* Pl.'s Response Brief at 9. Desert Glory similarly seeks to dismiss Bhullar based, *inter alia*, on its unsupported conjecture that the Bhullar court was relying on the pre-NAFTA version of the statute. *See* Pl.'s Response Brief at 9-11 & n.11 (speculating that the Bhullar court "appears not to have examined the now current version of the statute"). Desert Glory's attempts to distinguish both cases are thus premised on its claim that the CFTA and the NAFTA versions of the statute are materially different. But, as section IV.B above explains, there is no merit to that claim.

## V. <u>Conclusion</u>

As discussed in detail above, Desert Glory failed to give the timely notice of its intent to commence judicial review required under 19 U.S.C. § 1516a(g)(3)(B). Because the Court therefore lacks subject matter jurisdiction in this case, the Government's motion is granted, and this action is dismissed.

Judgment will enter accordingly.

          /s/

Delissa A. Ridgway, Judge

Decided:    April 27, 2005
               New York, New York