Slip Op. 06-123

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - x
ONTARIO FOREST INDUSTRIES ASSOC.    :
and ONTARIO LUMBER MANUFACTURERS    :
ASSOC.,                             :
                                    :
              Plaintiffs,           :
                                    :
              v.                    :    Before: Pogue, Judge
                                    :    Ct. No. 06-00156
THE UNITED STATES OF AMERICA,       :
and SUSAN C. SCHWAB,                :
                                    :
              Defendants,           :
                                    :
- - - - - - - - - - - - - - - - - - x
```

**OPINION**

Decided: August 2, 2006

[Plaintiffs' motion for expedition denied; proposed Defendant-Intervenor's motion to intervene granted; action dismissed.]

Baker & Hostetler, LLP (Elliot Jay Feldman, Michael Steven Snarr, Bryan Jay Brown, and John Burke) for Plaintiffs;

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stephen Carl Tosini, Trial Attorney) for Defendant United States;

Dewey Ballantine LLP (Harry L. Clark, Kevin M. Dempsey, John W. Bohn, and David A. Bentley) for proposed Defendant-Intervenor.

**Pogue, Judge:** This case presents the questions of whether the Court of International Trade has jurisdiction to issue a writ of mandamus compelling the United States Trade Representative ("USTR") to appoint a member to an Extraordinary Challenge Committee – a reviewing authority in the North American Free Trade Agreement binational review system – and, if so, whether such a writ should be entered. Pending before the court are (1) Plaintiffs' motion

for expedited consideration; (2) the Coalition for Fair Lumber Imports Executive Committee's ("Coalition") motion to intervene; (3) the Defendants' and Coalition's motions to dismiss for lack of jurisdiction and failure to state a claim; and (4) Plaintiffs' motion for judgment on the agency record.

For the reasons set forth below the court denies Plaintiffs' motion for expedited consideration; grants the Coalition's motion to intervene; grants the Defendants' and Coalition's motions to dismiss for lack of jurisdiction; and denies Plaintiffs' motion for judgment on the agency record.

**BACKGROUND**

Under United States trade laws, the Department of Commerce ("Commerce") is responsible for investigating whether foreign goods are being dumped into the United States or are benefitting from a countervailable subsidy. See 19 U.S.C. § 1671 (2000) et seq. If so, the International Trade Commission ("ITC") must investigate whether such dumping or subsidization causes, or threatens to cause, material injury to a U.S. industry. If Commerce finds that dumping or subsidization has occurred, and the ITC finds that dumping or subsidization causes, or threatens to cause, material injury to a domestic industry, interested parties[1] may, each year,

---

[1]The statutes define "interested party" to include, "a foreign manufacturer, producer, or exporter, or the United States
(footnote continued)

upon the anniversary of the original findings, request an administrative review to adjust the dumping or countervailing duty in light of the importers' actual then current conduct.  See  19 U.S.C. § 1675.

When goods originate from a nation that is party to the North American Free Trade Agreement ("NAFTA"), interested parties to the investigation or administrative review have two options for seeking a review or appeal of a final determination by the ITC or Commerce. Parties may elect to seek review by appealing either to a NAFTA "binational panel" or to the United States Court of International Trade.  Because there are alternative avenues for appeal, the NAFTA Implementation Act provides a framework so that these two avenues of review do not collide.  See, e.g., Am. Coal. for Competitive Trade v. Clinton, 128 F.3d 761, 761-63 (D.C. Cir. 1997). Specifically, the NAFTA Implementation Act both precludes the commencement of any action before the Court of International Trade within thirty days of a notice of a final determination and

---

importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise"; "the government of a country in which such merchandise is produced or manufactured or from which such merchandise is exported"; "a manufacturer, producer, or wholesaler in the United States of a domestic like product"; "a certified union or recognized union or group of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States of a domestic like product"; and "a trade or business association a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States."  19 U.S.C. § 1677(9)(A)-(E) (1994)

requires that any interested party seeking binational panel review file notice of review with the NAFTA Secretariat within thirty days of that determination.  See 19 U.S.C. § 1516a(a)(5)(B); Desert Glory, Ltd. v. United States, 29 CIT ___, ___, 368 F. Supp. 2d 1334, 1337 (2005); N.D. Wheat Comm'n v. United States, 28 CIT ___,___, 342 F. Supp. 2d 1319, 1321-23 (2004).  See also S. Rep. No. 100-509, at 33-34 (1988), reprinted in 1988 U.S.C.C.A.N. 2395, 2428.  Once a review is requested before a binational panel, no action contesting the determination in question may be brought before the Court of International Trade, 19 U.S.C. § 1516a(g)(2), except as to certain constitutional issues not at issue here, 19 U.S.C. § 1516a(g)(4)(B),[2] or where other statutory exceptions apply, 19 U.S.C. § 1516a(g)(3); cf. 28 U.S.C. § 1584.  If no review is requested before a NAFTA binational panel, parties may seek review of the determination before the Court of International Trade

---

[2]In addition, review of a determination challenged "on the grounds that any provision of, or amendment made by, the North American Free Trade Agreement Implementation Act implementing the binational dispute settlement system under chapter 19 of the NAFTA, or the United States-Canada Free-Trade Agreement Implementation Act of 1988 implementing the binational panel dispute settlement system under chapter 19 of the Agreement, violates the Constitution" is available in the United States Court of Appeals for the District of Columbia Circuit so long as that review is commenced following the completion of the binational review process.  See 19 U.S.C. § 1516a(g)(4)(A); Am. Coal. for Competitive Trade, 128 F.3d at 765.  Even though these actions may only be raised in U.S. courts, the NAFTA Implementation Act still requires that they be raised after completion of the binational review process.  See 19 U.S.C. § 1516a(g)(4)(C); Am. Coal. for Competitive Trade, 128 F.3d 761, 765-66 (D.C. Cir. 1997).

so long as an action is commenced within thirty days following expiration of the stay defined in 19 U.S.C. § 1516a(a)(2)(B)(5).[3]

NAFTA binational panels are comprised of five members.  In addition, the government of each nation that is a party to NAFTA ("NAFTA government") is required to maintain a roster of twenty-five potential panelists.  See North American Free Trade Agreement, U.S.-Can.-Mex., Dec. 17, 1992, annex 1901.2(1), 32 I.L.M. 289, 687 (1993).  When a panel is requested,  the NAFTA governments involved in the matter ("the parties") select two panelists from each of their requisite rosters; the parties appoint the fifth panelist by agreement or, if the parties fail to agree, the parties decide by lot which of them may select from its roster the last panelist. Id.  "If an involved Party fails to appoint its members to a panel within 30 days . . . such panelists shall be selected by lot on the 31st . . . day . . . from the Party's candidates on the roster." NAFTA annex 1901.2(2), 32 I.L.M. 289, 687.

The panel applies "the general legal principles that a court of the importing Party otherwise would apply to a review of a determination of the competent investigating authority[,]" including the standard of review used by courts of that country.

---

[3]The NAFTA binational review system is largely predicated on the rules and procedures of the binational panel review system created by the United States - Canada Free Trade Agreement ("CFTA").  See North American Free Trade Agreement Implementation Act Statement of Administrative Action ("SAA"), reprinted in H. R. Doc. No. 103-159, at 194 (1993). CFTA preceded NAFTA.

NAFTA Art. 1904(3), 32 I.L.M. at 683; see also NAFTA annex 1911, 32 I.L.M. at 691-93. The panel is empowered to sustain or remand the determination under review, NAFTA Art. 1904(2), 32 I.L.M. at 683, and its findings are binding on the participating governments with respect to the matter at issue. NAFTA art. 1904(9), (11), (15), 32 I.L.M. at 683-84; 19 U.S.C. § 1516a(g)(2). See also S. Rep. No. 100-509, at 31 (1988), reprinted in 1988 U.S.C.C.A.N. 2395, 2426 ("Because binational panels act as a substitute for U.S. courts in deciding whether a determination is consistent with U.S. law, the Committee intends binational panel decisions to be implemented in the same manner that court decisions are implemented under the current law.").[4]

Upon completion of the Panel's review, the responsible NAFTA Secretary must cause to be published a "Notice of Final Panel Action" in the Federal Register. See Rules and Procedure for Article 1904 Binational Panel Reviews, 59 Fed. Reg. 8686, 8698 (Dep't Commerce Feb. 23, 1994) (North American Free Trade Agreement). Decisions of panels may only be reviewed by an Extraordinary Challenge Committee ("ECC"). NAFTA art. 1904(11)&(13), 32 I.L.M. at 683; 19 U.S.C. § 1516a(g)(2); see also

---

[4]Moreover, NAFTA requires the member states "amend [their] statutes or regulations to ensure that existing procedures concerning the refund, with interest, of antidumping or countervailing duties operate to give effect to a final panel decision that a refund is due[.]" NAFTA art. 1904(15)(a), 32 I.L.M. at 684.

NAFTA annex 1904.13, 32 I.L.M. at 688. Whereas binational panels may be convened upon the request of any interested party to the agency proceedings, an ECC may convene only upon request of a NAFTA party itself, i.e., either the government of Canada, Mexico, or the United States. NAFTA art. 1904(13), 32 I.L.M. at 683; NAFTA annex 1904.13, 32 I.L.M. at 688. Once convened, an ECC may only set aside a panel's findings where:

> (a)(i) a member of the panel was guilty of gross misconduct, bias, or a serious conflict of interest, or otherwise materially violated the rules of conduct; (ii) the panel seriously departed from a fundamental rule of procedure, or (iii) the panel manifestly exceeded its powers, authority or jurisdiction set out in this Article, for example by failing to apply the appropriate standard of review, and (b) any of the actions set out in subparagraph (a) has materially affected that panel's decision and threatens the integrity of the binational panel review process.

NAFTA art. 1904(13), 32 I.L.M. at 683.

NAFTA parties have either thirty days from the issuance of a Notice of Final Panel Action, or thirty days from the time the party discovers a violation, to request an ECC (provided that the request for an ECC is commenced within two years of the panel decision). See Rules and Procedure for Article 1904 Extraordinary Challenge Committees, 59 Fed. Reg. 8702, 8708 (Dep't Commerce Feb. 23, 1994) (North American Free Trade Agreement). NAFTA provides that the involved NAFTA governments shall establish an ECC within fifteen days of such a request. See NAFTA annex 1904.13, 32 I.L.M. at 688. Each ECC is comprised of three members. Id. Each of the

involved governments selects one member for an ECC from rosters of potential ECC members each nation is required to maintain;[5] the third and final member is selected by the party chosen by lot.  Id. Following a final review by an ECC, the responsible NAFTA secretary causes to be published a "Notice of Completion of Panel Review" and the members of the panel are "discharged from their duties."  Rules and Procedure for Article 1904 Binational Panel Reviews, 59 Fed. Reg. 8686, 8698 (Dep't Commerce Feb. 23, 1994) (North American Free Trade Agreement); see also Rules and Procedure for Article 1904 Extraordinary Challenge Committees, 59 Fed. Reg. 8702, 8711 (Dep't Commerce Feb. 23, 1994) (North American Free Trade Agreement).

In addition to extensive rules and timing requirements specified, see, e.g., NAFTA annex 1904.13(1), 32 I.L.M. at 688 (providing for the creation of ECCs within 15 days of a request); id. at 1904.13(2) (providing that the rules of procedure shall provide a decision of the committee within 90 days of establishment), NAFTA requires the NAFTA governments to establish rules of procedure for both panels and ECCs, NAFTA art. 1904(14), 32 I.L.M. at 684;  NAFTA annex 1904.13(2), 32 I.L.M. at 688; see

_____

[5]The roster for binational panelists and ECC members are different.  Whereas binational panelists need only be of "good character, high standing and repute, and shall be chosen strictly on the basis of objectivity, reliability, sound judgment and general familiarity with international trade law,"  NAFTA annex 1901.2(1), 32 I.L.M. at 687,  NAFTA requires that U.S. members of an ECC be "judges or former judges of the federal judicial court of the United States." NAFTA Annex 1904.13, 32 I.L.M. at 688.

also 19 U.S.C. § 3435.    To safeguard the integrity of the

binational panel system, NAFTA further provides that where a

> Party's domestic law (a) has prevented the establishment
> of a panel . . . ; (b) has prevented a panel . . . from
> rendering a final decision; [or] (c) prevented the
> implementation of the decision . . . or denied it binding
> force and effect which respect to the particular matter
> that was before the panel[,]

after consultation, a "special committee" convenes to determine

whether a violation has occurred.   NAFTA art. 1905(1), 32 I.L.M. at

684.   While the "special committee" meets, the parties may stay all

ongoing proceedings before panels and ECCs.   See Rules and

Procedure for Article 1904 Binational Panel Reviews, 59 Fed. Reg.

8686, 8698 (Dep't Commerce Feb. 23, 1994) (North American Free

Trade Agreement); see also Rules and Procedure for Article 1904

Extraordinary Challenge Committees, 59 Fed. Reg. 8702, 8711 (Dep't

Commerce Feb. 23, 1994) (North American Free Trade Agreement).   In

the event the special committee finds that a party's domestic law

has violated NAFTA in one of the manners specified above, the

aggrieved party may suspend Article 1904.   See NAFTA art. 1905(8),

32 I.L.M. at 684-85.   In such event, all matters involving a

determination by Commerce or the ITC pending before a binational

panel (or ECC) may be transferred to the Court of International

Trade.   See 19 U.S.C. § 1516a(g)(12)(B); see also 19 U.S.C. §

1516a(g)(3)(A)(v)&(vi).

As implemented into United States law, the United States Trade

Representative ("USTR") "is the only officer of the United States

Government authorized to act on behalf of the United States

Government in making any selection or appointment of an individual

to . . . panels or committees convened under [NAFTA] chapter 19 .

. . that is to be made solely or jointly by the United States

Government" pursuant to the Agreement.  19 U.S.C. § 3432(d).  The

NAFTA Implementation Act further specifies that:

> The selection of individuals [for] . . . appointment by
> the Trade Representative for service on the panels and
> committees convened under chapter 19 . . . shall be made
> on the basis of the criteria provided in paragraph 1 of
> Annex 1901.2 and paragraph 1 of Annex 1904.13 and shall
> be made without regard to political affiliation.

19 U.S.C. § 3432(a)(1)(E).[6]

---

[6]Section 3432 of Title 19 further mandates that the USTR
follow other substantive and procedural requirements relevant for
selecting panelists and committee members.
     NAFTA Annex 1904.13 provides:

Extraordinary Challenge Procedure
(1) The involved Parties shall establish an extraordinary
challenge committee, composed of three members, within 15
days of a request pursuant to Article 1904(13). The
members shall be selected from a 15-person roster
comprised of judges or former judges of a federal
judicial court of the United States or a judicial court
of superior jurisdiction of Canada, or a federal judicial
court of Mexico. Each Party shall name five persons to
this roster. Each involved Party shall select one member
from this roster and the involved Parties shall decide by
lot which of them shall select the third member from the
roster.
(2) The Parties shall establish by the date of entry into
force of the Agreement rules of procedure for committees.
The rules shall provide for a decision of a committee
within 90 days of its establishment.
(3) Committee decisions shall be binding on the Parties
with respect to the particular matter between the Parties
that was before the panel. After examination of the legal
                                        (footnote continued)

In rendering assistance to ECCs, the NAFTA Implementation Act provides to district courts the authority to compel testimony and depositions of persons found within the United States, and production of documents found within the United States.  See 19 U.S.C. § 3433.

### B.

This case arises from the much litigated imposition of countervailing duties on softwood lumber from Canada.  Plaintiffs, Ontario Forest Industries Association and the Ontario Lumber Manufacturers Associations represent producers of softwood lumber from Canada currently subject to countervailing duties pursuant to Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36,070 (Dept. Commerce May 22, 2002) (notice of amended final affirmative countervailing duty determination and notice of countervailing duty order).  Following issuance of the final determination in that CVD

---

and factual analysis underlying the findings and conclusions of the panel's decision in order to determine whether one of the grounds set out in Article 1904(13) has been established, and on finding that one of those grounds has been established, the committee shall vacate the original panel decision or remand it to the original panel for action not inconsistent with the committee's decision; if the grounds are not established, it shall deny the challenge and, therefore, the original panel decision shall stand affirmed. If the original decision is vacated, a new panel shall be established pursuant to Annex 1901.2.

32 I.L.M. at 688.

investigation, Plaintiffs (among others) timely appealed the final determination to a NAFTA binational panel.  After five remands, on March 17, 2006 the panel affirmed Commerce's fifth remand determination which found that the subsidy was de minimis (and therefore not countervailable).  See In re: Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty Determination, Secretariat File No. USA-CDA-2002-1904-03, pg. 4 (Mar. 17, 2006) (decision of panel on fifth remand determination), available at http://www.nafta-sec-alena.org/app/DocRepository/ 1/Dispute/english/NAFTA_Chapter_19/USA/ua02035e.pdf. In accordance with this decision, the responsible NAFTA Secretary issued a Notice of Final Panel Action on March 28, 2006.  Disagreeing with the Panel's decision(s), the United States, less than a month after the Notice of Final Panel Action, filed a request for an ECC challenging the Panel's decision.

Contemporaneously with the Panel's final action and the United States' request for an ECC, the United States and Canada  commenced settlement discussions and entered into a tentative settlement agreement.  Under the basic terms of the tentative agreement, "the Parties will take steps to terminate all litigation by the entry into force of the Agreement[.]"  Basic Terms of a Canada-United States Agreement on Softwood Lumber 3 (Apr. 27, 2006), Attach. A to Def's Resp. Ct.'s Order of May 26, 2006.  Acknowledging that those discussions might moot the United States' challenge before the ECC,

the United States and Canada sent a joint notice to interested parties advising that:

> On April 27, 2006, the Government of the United States and the Government of Canada announced an agreement to resolve the softwood lumber dispute.  In light of that agreement, our two Governments agreed that [the ECC proceedings] would be suspended. . . . The proposed Notice advises participants that the briefing schedule set by the Rules is suspended, such that participants need not file briefs or other submissions unless and until they receive notice that either Canada or the United States has decided that this proceedings should move forward.

Letter from Hugh Cheetham, Senior Counsel/Deputy Director DFAIT and William L. Busis, Associate General Counsel, USTR, to Caratina L. Altson, NAFTA Secretariat, United States Section, pg. 1 (May 12, 2006) (In the Matter of Certain Softwood Lumbers Products from Canada: Final Affirmative Countervailing Duty Determination: ECC-2006-1904-01USA) ("Suspension Notice"), Attach. C to Def's Resp. Ct.'s Order May 26, 2006.

In accordance with this notice and the ongoing settlement discussions,  to date, neither the United States, nor the Government of Canada ("Canada"), has selected its member for the ECC or otherwise taken any measure with respect to the establishment or suspension[7] of an ECC.

---

[7]Strictly speaking, nothing in the NAFTA rules provides for the suspension of an ECC except when a special committee is convened upon allegations that a party's domestic law is frustrating the functioning of the binational panel review system.  See NAFTA art. 1904-1905, 32 I.L.M. at 683-85.

## C.

Plaintiffs filed their complaints on May 16, 2006. Along with their complaint, Plaintiffs filed a motion to set an expedited briefing schedule and a motion for expedited consideration. The court granted, in part, Plaintiffs' motion for an expedited briefing schedule but reserved judgment on their motion for expedited consideration. See Order of May 25, 2006.

Plaintiffs' complaint, and subsequent filings, charge that under NAFTA, an ECC must be formed 15 days after a request is received. Because the USTR has failed to appoint the U.S. member, the complaint claims, she has violated the rules of NAFTA and her obligations under 19 U.S.C. § 3432. Plaintiffs, therefore, seek a writ of mandamus compelling the USTR to either a) appoint a member to the ECC or, in the alternative, b) compel the USTR to have the matter transferred to this Court if the proceedings are suspended pursuant to Article 1905. Compl. 12; see also Letter from Elliot J. Feldman, Michael S. Snarr & Ronald J. Baumgarten, Counsel to the Ontario Forest Indus. Ass'n and the Ontario Lumber Mfrs. Ass'n, to The Honorable Caratina Alston, U.S. Secretary, NAFTA Secretariat, U S. Section, 1-2 (May 16, 2006) (Regarding Certain Softwood Lumber Products from Canada Final Affirmative Countervailing Duty Determination, Secretariat File No ECC-2006-1904-01 USA Notice Of Request To Transfer Proceedings To U.S. Court Of International Trade In The Event Of NAFTA Article 1905 Suspension Of Article 1904

Binational Panel System).

After the complaint was filed, the Coalition – which represents a group of United States producers of softwood lumber constituting a significant percentage of domestic producers, see Second Mot. Intervene of Coalition for Fair Lumber Imports Executive Committee 1-2 --  filed a motion to intervene.  Because the motion was not "accompanied by a pleading setting forth the claim or defense for which intervention [was] sought," this court denied that motion without prejudice pursuant to USCIT R. 24.  See Order of June 14, 2006 (citing USCIT R. 24(c)).  Before the Defendants filed their first responsive pleading, the Coalition re-filed a motion to intervene, this time accompanied by a pleading and a motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim.  The Defendants also filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.

## I. Expedition

As appropriately recognized by Plaintiffs, accelerating a case for disposition has two independent parts: expedited briefing and expedited consideration.  The latter, at issue here, is governed by

USCIT R. 3(g).[8]

Largely restating the order of precedence as established in the Court's charter, current USCIT R. 3(g) provides that:

> Unless the court, upon motion for good cause or upon its own initiative determines otherwise in a particular action, the following actions shall be given precedence, in the following order, over other actions pending before the court, and expedited in every way:

---

[8]When Congress created the Court of International Trade in 1980, it established an order of precedence by which certain subject matters would be granted priority over others. See Pub. L. 96-417, Title III, § 402(29)(G), 94 Stat. 1727, 1739 (1980). This original order of precedence, however, was short-lived. In 1984, finding that over the previous "two hundred years various Congresses ha[d] acted in an ad hoc and random fashion to grant 'priority' to particular and diverse types of cases" which resulted in "so many expediting provisions . . . that it [was] impossible for courts to intelligently categorize cases," Congress decided to "wipe[] the slate clean of such priorities with certain narrow exceptions." H. Rep. No. 98-985, at 1 (1984), as reprinted in 1984 U.S.C.C.A.N. 5779, 5779. Believing that the "courts themselves were in the best position to prioritize their dockets," Freedom Commc'ns Inc. v. FDIC, 157 F.R.D. 485, 486 (C.D. Cal. 1994), Congress repealed all its prior precedence-setting provisions and granted:

> each court of the United States [authority to] determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any . . . action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown.

28 U.S.C. § 1657(a) (emphasis added). Congress further provided that "'good cause' is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." Id.
Reacting to the repeal of its precedence statute, and invoking its new discretionary authority under section 1657(a), the court adopted USCIT R. 3(g).

(1) An action seeking a temporary or preliminary injunctive relief;
(2) An action involving the exclusion of perishable merchandise or redelivery of such merchandise;
(3) An action described in 28 U.S.C. § 1581(c) to contest a determination under section 516A of the Tariff Act of 1930;
(4) An action described in  28 U.S.C. § 1581(a) to contest the denial of a protest, in whole or in part, under [s]ection 515 of the Tariff Act of 1930, involving the exclusion or redelivery of merchandise;
(5) An action described in  28 U.S.C. § 1581(b) to contest a decision of the Secretary of Treasury under section 516 of the Tariff Act of 1930[;]
(6) Any other action which the court determines, based upon motion and for good cause shown, warrants expedited treatment.[9]

Plaintiffs' claims do not rest on any enumerated grounds specified by subparagraphs 1 through 5.  Therefore, in order to grant expeditious consideration of this matter, the court must find that "good cause" exists within the meaning of either the prefatory language, i.e., "[u]nless the court, upon motion for cause or upon its own initiative determines otherwise in a particular action," or subparagraph 6.

In construing the language of Rule 3(g), the court's interpretation is both bounded and guided by Congressional mandate.  See 28 U.S.C. § 2071 ("The Supreme Court and all courts established by Act of Congress may from time to time prescribe

---

[9]Paragraph 6 was added on March 21, 2006 and became effective April 10, 2006.  It appears to the court that this amendment aimed to reinforce the objectives of the prefatory language, although there is some redundancy between the prefatory language and the language of subparagraph 6.

rules for the conduct of their business. Such rules shall be <u>consistent with Acts of Congress</u> and rules of practice and procedure prescribed under [28 U.S.C. § 2072]." (emphasis added)); 28 U.S.C. § 1585 (conferring the Court of International Trade all powers in law equity conferred on district courts); 28 U.S.C. § 2633(b)("The Court of International Trade shall prescribe rules governing . . . procedural matters."). <u>Accord</u> <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 392 (1990) ("We therefore interpret Rule 11 according to its plain meaning, in light of the scope of the congressional authorization." (citation omitted)).  As noted above, Congress has provided that "good cause" is found where (1) a claim of right arises "under the Constitution of the United States or a Federal Statute . . . [and 2] in a factual context that a request for expedited consideration has merit."  28 U.S.C. § 1657(a).  The text, most "notably the reference to a 'factual context', suggests that Congress contemplated case-by-case decision making" applying the standard.  <u>Freedom Commc'ns Inc.</u>, 157 F.R.D. at 486.

In elucidating the "good cause standard,"  the legislative history of section 1657(a) provides that "good cause" should be found: "[1] in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value, [2] in a case in which failure to expedite would result in

extraordinary hardship to a litigant,[10] or [3] actions where the public interest in enforcement of the statute is particularly strong." H. Rep. No. 98-985, at 6 (1984), as reprinted in 1984 U.S.C.C.A.N. 5779, 5784 (footnotes omitted). Providing an example of when this criteria is met, both the statute and legislative history invoke cases brought under the Freedom of Information Act ("FOIA") as paradigmatic examples of "good cause." Congress reasoned that prompt adjudication of FOIA cases (a) foster the important goal of creating an informed citizenry; (b) involve remedies of a "transitory" nature, i.e., that delay could render an information request "of no value at all;" and (c) do not "involve extended discovery or testimony and therefore do not burden court dockets for extensive periods of time." Id. at 5-6 (1984), as reprinted in 1984 U.S.C.C.A.N. at 5783-84. These interests notwithstanding, however, Congress also "wish[ed] to preclude clearly frivolous lawsuits from being granted expedited treatment merely by involving a statutory cause of action which had been given expedited status." Id. at 5, as reprinted in 1984 U.S.C.C.A.N. at 5783.

---

[10]The House Report specifically noted in a footnote that "a case challenging denial of disability benefits on which the
                                        (footnote continued)
plaintiff is dependent for subsistence" presents an example of good cause. H. Rep. No. 98-985, at 6 n.8 (1984), as reprinted in 1984 U.S.C.C.A.N. 5779, 5784 n.8. However, under the Rule's current formulation, cases challenging the denial of trade adjustment assistance are not afforded a specific priority.

Applying these principles here, the court cannot conclude that expedition is warranted.   Plaintiffs do make a claim of right accruing under a federal statute, 19 U.S.C. 3432(a)(1)(E), and the Due Process Clause of the Fifth Amendment of the United States Constitution.   <u>See</u> Compl. 10-12.   However, even if the court were to assume jurisdiction over the question, the Plaintiffs' case, if not frivolous, at least appears to lack the legal basis necessary to compel expedition.[11]

Plaintiffs contend that the USTR has violated section 3432(a)(1)(E) by failing to appoint an ECC member within the time frame provided in NAFTA.   That provision provides, in relevant part,

> The selection of individuals under this section for . . . appointment by the Trade Representative for service on the panels and committees convened under chapter 19 . . .   shall be made on the basis of the <u>criteria</u> provided in paragraph 1 of Annex 1901.2 and paragraph 1 of Annex 1904.13 and shall be made without regard to political affiliation.

19 U.S.C. § 3432(a)(1)(E)(emphasis added). Essentially, Plaintiffs read the word "criteria" to incorporate not only the appointees'

---

[11]Of course, in considering whether a claim is "clearly frivolous," a court should also consider whether a claim of jurisdiction is frivolous. <u>Cf.</u> <u>U.S. Ass'n of Imps. of Textiles & Apparel v. United States</u>, 413 F.3d 1344, 1348-49 (Fed. Cir. 2005) (considering a claim that the matter was not ripe in its consideration of the likelihood of success on the merits).   The court further notes that this inquiry must be superficial – if the court were to exhaustively research and determine the merits of a claim for purposes of expedition, it would be, in effect, prioritizing that case.

credentials as stated in NAFTA but also the time period in which appointments must be made.

Although section 3432(a)(1)(E) does incorporate some requirements of NAFTA by direct reference as to the qualifications of the "individuals," nowhere does it incorporate any requirement as to the time when the USTR must make appointments. To the contrary, section 3432(a)(1)(E)'s invocation of the "political affiliation" of the appointee, and section 3432(a)(2)'s description of the qualifications of individuals, suggest that section 3432(a)(1)(E) only establishes parameters as to the credentials of the appointments. Indeed, section 3432(a)(1)(E) does not require the appointment of anyone at all. Cf. 19 U.S.C. § 3432(b)(4) ("At such time as the Trade Representative proposes to appoint a judge . . . .").

Nor do Plaintiffs establish that the other considerations for expedited consideration are met. It is hard to see how the public interest is advanced by forcing litigation during the pendency of settlement negotiations (when the primary parties have agreed that staying the action is appropriate). See, e.g., Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982) (noting the strong federal policy in favor of settlement); accord McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17 (1963) ("the presence of public questions particularly high in the scale of our national interest because of their international complexion

is a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power."). The court also does not find that the problems of delay suffice to warrant expedition. Although the court can appreciate that the requirement of posting cash deposits may have deleterious effects on the competitive position of a firm (especially over time), this is a problem many (if not all) litigants face before the Court. Therefore, there is nothing "extraordinary" here that warrants this case taking priority over other cases pending before the court.

Therefore, Plaintiffs' motion to expedite is denied, and this matter will be decided in the ordinary course of consideration by the court.

## II. Motion to Intervene

The Coalition seeks to intervene as a matter of right, or, in the alternative, by leave of the court. Intervention is governed by 28 U.S.C. § 2631(j) and USCIT R. 24(a). Section 2631(j) provides that:

> (1) Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that--
> (A) no person may intervene in a civil action under section 515 or 516 of the Tariff Act of 1930 [19 U.S.C. §§ 1515 or 1516];
> (B) in a civil action under section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a], only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right; and

> (C) in a civil action under section 777(c)(2) of the Tariff Act of 1930 [19 U.S.C. § 1677f(c)(2)], only a person who was a party to the investigation may intervene, and such person may intervene as a matter of right.
>
> (2) In those civil actions in which intervention is by leave of court, the Court of International Trade shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

As implemented into the Court rules, USCIT R. 24(a) & (b) provide, in relevant part,

> (a) Upon timely application anyone shall be permitted to intervene in  an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. . . .
>
> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Although USCIT R. 24(a) provides two scenarios where a motion for intervention as of right can be granted, i.e., (i) when provided for in statute or (ii) when the party has an interest in the dispute, section 2631(j) does not appear to contemplate intervention as of right except when intervention as of right was

explicitly provided for in 2631(j)(1)(A)-(C).

The court need not wrestle with this question here, however, because the Coalition has also moved for permissive intervention. As provided in section 2631(j) -- the statutory basis creating a "conditional right to intervene" - permissive intervention is appropriate (1) when the proposed intervenor would be "adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade"; and (2) the court is satisfied that (a) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties and (b) the motion is "timely."[12]

The phrase "adversely affected or aggrieved," which mirrors the language in numerous statutes, including the Administrative Procedure Act, 5 U.S.C. § 702, represents a "congressional intent to cast the [intervention] net broadly -- beyond the common-law interests and substantive statutory rights" traditionally known to law. Fed. Election Comm'n v. Akins, 524 U.S. 11, 19 (1998). Here, the Coalition has sufficient interest in the outcome of this case. Although countervailing duty investigations and reviews are described as "investigatory in nature," they also resemble, in some respects, adjudications between domestic and foreign parties

---

[12]The court notes that here jurisdiction is founded under 28 U.S.C. § 1581(i). Section 2631(j) of Title 28 allows permissive intervention in such suits. In contrast, under 28 U.S.C. § 1581(c), intervention may only be sought as a matter of right. See 28 U.S.C. § 2631(j)(B).

where the agency adjudicates the matter.  Cf. NEC Corp. v. United States, 151 F.3d 1361, 1371 (Fed. Cir. 1998).  The issue before the appropriate agencies, generally speaking, is establishing the appropriate level of competition (as defined by the trade laws) between importers and domestic industries.  Cf. id. at 1376; Canadian Lumber Trade Alliance v. United States, 30 CIT ___, 425 F. Supp. 2d 1321, 1353 (2006) (noting the purpose of antidumping and countervailing duty laws is to regulate the level of competition between importers and domestic industry).  Because binational panels may sustain or remand the results of these investigations, they too affect the level of competition as between importers and the domestic industries.  As these principles specifically relate to this case, the timing and effects of an ECC (or a settlement) will directly impact the competitive position of the domestic industry vis-a-vis their Canadian competitors.  Consequently, the Coalition's members will be directly affected by the outcome of this adjudication.

Nor would the Coalition's intervention "unduly delay or prejudice" the adjudication of this matter.  The Coalition's motion to intervene predated the Defendants' motion to dismiss and the Coalition filed all of its papers along the same time-line as the Defendants.  Nevertheless, Plaintiffs argue that "intervention always delays the resolution of judicial proceedings[,]" and, therefore, the Coalition's motion should be denied.  Petitioner's

Resp. Mot. Intervene Coalition Fair Lumber Imports Executive Committee 10 (emphasis added).  While assuredly true, if the court were to accept this proposition, it would essentially be holding that permissive intervention can never be permitted.  This, in turn, would essentially strip section 2631(j)(1)&(2) of all force or effect.

Recognizing this problem, the statute and rule do not state that _any_ delay warrants denial of a motion to intervene, but only that _undue_ delay warrants such denial.  Opponents of a motion to intervene, therefore, must allege that the delay would be "more than is due or proper: excessive[]"  XVIII Oxford English Dictionary 1011-12 (8th ed. 2002) (forth definition); cf. id. at 1010 (defining "undue" as to "go[] beyond what is appropriate, warranted, or natural; [be] excessive.").  Consequently, by arguing that delay is typical whenever a party intervenes, Plaintiffs' argument in the abstract fails to prove why permitting intervention would be improper here.  Nor does the court find that concerns of undue delay are warranted on the facts of this case.  The Coalition largely raises the same arguments raised by Defendants (albeit sometimes in a more developed form), thereby only modestly increasing the burden on Plaintiffs.[13] Furthermore,

---

[13]As mentioned above, USCIT R. 24(a) requires that intervenors must file a pleading along with their motions.  This pleading allows the court to assess whether the proposed intervenors will positively, and in good-faith, contribute to the proceedings.

given that the court has an independent duty to ascertain whether it has jurisdiction in this matter, because many of the arguments the Coalition raises are jurisdictional in nature, the additional research and argument may even save the court research (and, therefore, time).

Accordingly, exercising its discretion under section 2631(j) and USCIT R. 24(b), the court grants the Coalition's motion to intervene.  Cf. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 380 (1987) ("a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference.").

### III. Motions to Dismiss under Rule 12(b)(1)

Defendants and the Coalition argue that this court lacks jurisdiction here, inter alia, because Plaintiffs lack standing and this matter is precluded from the court's jurisdiction under 28 U.S.C. § 1581(i).  The court will address each in turn.

### (A) Standing

In order to commence an action before the Court, Plaintiffs must establish that their actions present a "case or controversy" within the meaning of Article III of the United States Constitution.  See, e.g., DaimlerChrysler Corp. v. Cuno, 548 U.S.

__, No. 04-1704, Slip Op. at 4-6 (2006). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." Id. at 5.

One of the core components of this "case or controversy" requirement is whether the complaining parties have standing to raise their claims. Id.; see also Canadian Lumber Trade Alliance v. United States, 30 CIT ___, 425 F. Supp. 2d 1321, 1373 (2006). To establish standing, plaintiffs bear the burden of proving that:

> (1) that [they] have suffered an "injury in fact"--an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of--the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 167 (1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Plaintiffs here allege that they are injured by the unauthorized delay in the binational panel/ECC proceedings. This delay, they assert, requires them to continue to post cash-deposits, and delays (perhaps indefinitely) the return of cash-deposits previously tendered. This, in turn, deprives Plaintiffs of the time-value of money, imposes transaction costs in securing credit to cover cash-deposits, and may (if the ECC proceedings never resume) deprive Plaintiffs of money. No reasonable mind

could doubt that this is a judicially cognizable injury sufficient to satisfy the injury in fact test for Article III standing.  See, e.g., Gen. Motors Corp. v. Tracy, 519 U.S. 278, 287 (1997) (finding that an imposition of a tax was "plainly" a cognizable injury); Bacchus Imps., Ltd. v. Dias, 468 U.S. 263, 267 (1984) (same).[14]

What is more problematic for Plaintiffs, however, is the question of redressibility.  As noted above, an ECC has three members, one selected by Canada, one by the United States, and one by the party chosen by lot.  Therefore, even if the United States

---

[14]Nevertheless, the Defendants argue that because Plaintiffs have no constitutionally protected right to import, they fail to have a cognizable injury.  This argument (a) impermissibly conflates the standing inquiry with a merits analysis, see, e.g., ASARCO Inc. v. Kadish, 490 U.S. 605, 624 (1989) (standing is a threshold inquiry that "in no way depends upon the merits of the [claim]" (quoting Warth v. Sheldin, 490 U.S. 422 U.S. 490, 500 (1975)); Ass'n of Data Processing Service Org., Inc. v. Camp, 397 U.S. 150, 153 (1970); Canadian Lumber Trade Alliance, 30 CIT at ___, 425 F. Supp. 2d at 1343-44; accord Gilda Indus. Inc. v. United States, 446 F.3d 1271, 1279 & 1284 (Fed. Cir. 2006) rehearing den'd 2006 U.S. App. LEXIS 16812 (July 6, 2006) (finding standing but dismissing, in part, the case on the merits because plaintiff did not have a constitutional right to the maintenance of an existing tariff rate or duty); (b) relies on a logic long ago abandoned by the Supreme Court, Canadian Lumber Trade Alliance, 30 CIT at ___, 425 F. Supp. 2d at 1343-44; and (c) is contradicted by twenty-six years of history, i.e., because standing is an "indispensable constitutional minimum [which] [n]o act of Congress may displace," such an argument, if adopted, would essentially abolish much of the jurisdiction assigned to this court and negate many decisions decided by it, id. at 1338 n.17 (2006).  Although the court appreciates that standing is a difficult concept, it has extensively reviewed applicable case law to assist the parties in appropriately considering the issue. See id. at 1335-49.

were to appoint its member, the ECC could still be incomplete.

Because commissioning an ECC will require Canada's independent

action, none of the injuries for which Plaintiffs complain would

likely be redressed simply by compelling the USTR to appoint the

United States' member.   Cf. Defenders of Wildlife, 504 U.S. at

569-71 (finding redressibility not met where agencies not before

the court made the ultimate decision);  DaimlerChrysler Corp., 548

U.S. at __, Slip. Op. at 8 (holding that it is pure speculation

how elected state officials will pass along a tax surplus); but

cf. id. at 13-14 (noting that municipal taxpayers have standing to

challenge the illegal use of municipal monies (and, perhaps, that

redressibility in that context is not too speculative)); Sacilor,

Acieries et Laminoirs de Lorraine v. United States, 815 F.2d 1488,

1491 (Fed. Cir. 1987).

 Addressing this concern, Plaintiffs point to the notice they

received from the Governments of Canada and the United States

which

> advise[d] participants that the briefing schedule set by
> the Rules is suspended, such that participants need not
> file briefs or other submissions unless and until they
> receive notice that either Canada or the United States
> has decided that this proceeding should move forward.

Suspension Notice, Attach. C to Def's Resp. Ct.'s Order May 26,

2006 (emphasis added).   Plaintiffs aver that if either Canada or

the United States decides that this proceeding should move forward

then, under the terms of the Suspension Notice, the ECC process

will resume.  Plaintiffs' argument necessarily assumes that the appointment of one member to the ECC means that the "United States has decided that this proceeding should move forward."  However, it is less than clear that, because one member of the ECC has been appointed, the United States will (or has) necessarily decide(d) that the ECC should move forward.  To the contrary, because only the governments themselves are parties to the ECC proceedings, any movement by the ECC would appear to depend on the efforts of at least one of the governments to brief the matter even if an ECC is established.

**(B) Statutory Jurisdiction**

Even assuming standing, however, Plaintiffs have another insurmountable obstacle in raising its case: the court's equitable discretion in exercising jurisdiction.

Plaintiffs raise their claim under 28 U.S.C. § 1581(i). Section 1581(i) provides:

> In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> > (1) revenue from imports or tonnage;
> > (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> > (3) embargoes or other quantitative restrictions

> on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

> This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 [19 U.S.C. § 1516a(a)] or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement and section 516A(g) of the Tariff Act of 1930 [19 U.S.C. § 1516a(g)].

Defendants and the Coalition claim that this is a "matter" arising from a final determination being reviewed by a binational panel. Therefore, the argument goes, the court's jurisdiction is precluded over this matter.

In assessing whether jurisdiction is proper, the court must determine (1) what agency action is being contested, (2) whether the jurisdictional provision embraces that challenged agency action, and (3) whether jurisdiction contesting that action exists elsewhere or is otherwise exempted from the court's jurisdiction. See Gilda Indus. Inc. v. United States, 446 F.3d 1271, 1275-76 (Fed. Cir. 2006), rehearing den'd 2006 U.S. App. LEXIS 16812 (July 6, 2006); Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1304-05(Fed. Cir. 2003); Consol. Bearings Co. v. United States, 348 F.3d 997, 1001-02 (Fed. Cir. 2003); Tembec, Inc. v. United States, 30 CIT ___,___, Slip Op. 06-109 at 23 (July 21, 2006). In

considering these questions, the court must be mindful of the entity against whom the action is brought and the remedy that Plaintiffs are seeking. See, e.g., Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.C. Cir. 1982) (a jurisdiction inquiry "depend[ed] both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought"); cf. Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (holding that the relief sought was relevant to whether jurisdiction was proper under 42 U.S.C. § 1983 or 28 U.S.C. § 2254).

Here, the complaint claims that the USTR has failed to timely appoint a member to the ECC. The relevant agency action, therefore, is the USTR's failure (or delay) in acting. Cf. Action on Smoking & Health v. Dept. of Labor, 28 F.3d 162, 163-64 (D.C. Cir. 1994) (holding that inaction and delay can be "final agency actions"). Contrary to the contention of Defendants and the Coalition, the challenged agency action is not a challenge to the legality of a countervailing duty final determination -- it is not directed against the agencies charged with issuing such determinations nor do the Plaintiffs ask this court to invalidate or address the legality any such determination. Similarly, the complaint is not "in essence" a challenge to such a determination.

Section 1581(i)(4) of Title 28 provides jurisdiction over the administration and enforcement of the subject matters specified in section 1581(i)(1)-(3). The challenged agency action relates to

the administration and enforcement of the laws regulating "tariffs, duties, fees" and is not a final determination reviewable before a binational panel.  It is therefore within the subject matters specified in section 1581(i)(1)-(3).  As such, the court has jurisdiction over this action.  See Tembec, Inc., 30 CIT ___, Slip Op. 06-109 at 20 n.19.

But just because this court does have jurisdiction over a subject matter does not mean that a court must exercise that jurisdiction in all cases.  Although courts have a "virtually unflagging obligation" to exercise jurisdiction which is conferred by Congress,  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 821 (1976) (Stevens J, dissenting), federal courts do have the power to dismiss or remand a case based on abstention principles where the relief being sought is equitable or discretionary, see Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730 (1996).  Plaintiffs here seek a writ of mandamus.  Mandamus relief is both equitable and discretionary in nature.  See Decca Hospitality Furnishings, LLC v. United States, 30 CIT ___, ___, 427 F. Supp. 2d 1249, 1256 (2006); see also Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993).  Therefore, the question becomes: is abstention warranted?

Typically, "courts . . . .grapple with the issue of abstention in the context of parallel state court proceedings . . . . Nevertheless, in the interest of international comity, [courts]

apply the same general principles with respect to parallel proceedings in a foreign court." Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898 (7th Cir. 1999) (emphasis added). If international comity warrants abstention, the court may dismiss the case.

To be sure, "comity" is an amorphous concept -- it "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." Hilton v. Guyot, 159 U.S. 113, 163-164 (1895). The Supreme Court has characterized it as the "spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Société Nationale Industrielle Aérospatiale v. United States Dist. Ct., 482 U.S. 522, 543 n.27 (1987). It is a proposition which recognizes that U.S. courts should restrain their own action so as not to needlessly undermine the rules and procedures of a foreign court, and that it is not the role of U.S. courts to interfere with foreign courts' abilities to create and enforce their own rules in the manner they see fit. Cf. In re Maxwell Commc'n Corp., 93 F.3d 1036, 1047 (2d Cir. 1996).

Before considering whether comity counsels in favor of abstention, the court must first determine whether the binational panels constitute foreign parallel proceedings for which this court should grant regard or comity. As discussed above, the binational panel review system creates a parallel procedure for the

adjudication of trade disputes. Those proceedings are both adequate and complete – they have their own rules, procedures and enforcement mechanisms. When a binational panel needs assistance from foreign courts, both their rules, and U.S. law, permit courts of this country to grant such assistance. The legislative history also reveals that Congress intended for binational panels to be a "substitute" for the Court of International Trade. S. Rep. No. 100-509, at 31 (1988), as reprinted in 1988 U.S.C.C.A.N. 2395, 2426; see also id. at 34, 1988 U.S.C.C.A.N. at 2426 (noting the U.S. courts may consider panel decisions commensurate with their power to persuade). Therefore, the court finds that, for the purpose of considering the action discussed here, review by binational panels, for in all intents and purposes, constitutes "proceedings in a foreign court." See In re: Rolled Steel Plate Imports Originating in or Imported from Canada, Secretariat File No. MEX-96-1904-02, at 23-25 (Dec. 17, 1997) (review of the final determination of the antidumping investigation), available at http://www.nafta-sec-alena.org/app/DocRepository/1/Dispute/englis h/NAFTA_Chapter_19/Mexico/ma96020e.pdf (arguing that binational panels are jurisdictional, rather than arbitral, tribunals). Accord Medellin v. Dretke, 544 U.S. 660, 670 (2005) (Ginsburg, J. concurring) (arguing that the same comity principles U.S. courts apply to foreign courts should apply to the International Court of Justice); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S.

241, 258 (2004) (construing the phrase "foreign or international tribunal," as used in 28 U.S.C. § 1782(a), to include the Commission of the European Communities).

The next question is, do principles of comity counsel in favor of abstention?  In this case, Plaintiffs are alleging that the USTR is violating the rules of the binational panel review system and thereby preventing the timely and efficient adjudication of their claims.  As for relief, the Plaintiffs are essentially asking the court to step in and enforce the rules of the ECC (and binational panel review) or have the matter transferred to the Court of International Trade.  The court finds this request highly intrusive.

First, NAFTA rules explicitly provide a remedy when a member state fails to timely appoint its panelists to the binational panel; however, NAFTA does not provide any remedy in the event a member state fails to timely appoint it members to the ECC. Compare NAFTA art. 1901.2(2), 32 I.L.M. at 687 (creating a procedure for the establishment of a panel in the event an involved government does not timely select a panelist) with NAFTA annex 1904.13, 32 I.L.M. at 688.  Simiarly, NAFTA has procedures for when the laws of member states frustrate the ability of the binational panel system to function.  See NAFTA art. 1905, 32 I.L.M. at 684 (creating remedies when a member state's law impairs the ability of the binational panel review system).  These provisions strongly

suggest that when the NAFTA parties wanted to prevent each other from escaping or limiting the binational proceedings, the parties created remedies; therefore, when the NAFTA parties left a violation or limitation without a remedy, they did so intentionally.

Second, as noted above, NAFTA and the NAFTA Implementation Act explicitly require U.S. courts to render assistance, upon request of a binational panel or ECC, when such assistance is necessary. See 19 U.S.C. § 3433. As such, U.S. courts should be reluctant to step in when no request is made. In addition, the NAFTA Implementation Act precludes judicial review of constitutional challenges, either to the binational panel review system or of the underlying trade law, until the binational panel review is complete. See 19 U.S.C. § 1516a(g)(4)(C); Am. Coal. for Competitive Trade v. Clinton, 128 F.3d 761, 765-66 (D.C. Cir. 1997). This evidences a strong Congressional intent to leave the binational panel system free from judicial interference.

Third, NAFTA requires the member states to adopt "rules of procedure." NAFTA, art. 1904(14), 32 I.L.M. at 684. Giving guidance on the substance of those rules, NAFTA further states that those rules should be based on "judicial rules of appellate procedure." Id. Given that the allowance for settlement discussions is an important part of appellate procedure, see, e.g., Fed. R. App. P. 33; Rules for Regulating the Practice and Procedure

in the Federal Court of Appeal and the Federal Court, Part 9,

available at http://www.canlii.org/ca/regu/sor98-106/sec389.html

(Canadian Rules of Appellate Procedure), such allowances may

certainly be contemplated by NAFTA.[15]

Fourth, as for Plaintiffs' request to have this matter

transferred,[16] U.S. law permits U.S. courts to review cases only

when panel review has been suspended pursuant to NAFTA art. 1904 &

1905, 32 I.L.M. at 683-85.   See 19 U.S.C. § 1516a(g)(12)

(addressing the transfer of cases to the Court of International

Trade upon the suspension of binational panel reviews); see also

NAFTA art. 1905, 32 I.L.M. at 684-85 (creating special committees

to review when a members state's law is frustrating the binational

panel review system).  To usurp jurisdiction of a matter committed

to a "substitute" judicial system would unquestionably be

intrusive.[17]

---

[15]Plaintiffs do make a strong argument that the rules do not permit proceedings being held indefinitely in abeyance pending settlement talks.  However, when "the parties to a treaty both agree as to the meaning of a treaty provision, and that interpretation follows from the clear treaty language, [the court] must, absent extraordinarily strong contrary evidence, defer to that interpretation." Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 185 (1982).

[16]It is not entirely clear what the Plaintiffs are exactly seeking.  If their claim is that, in the event the proceedings are suspended, the matter should be transferred, this question surely is not ripe for review.

[17]It appears from the NAFTA rules that the binational panel is still in existence and parties may be able to petition it for relief, i.e., claim that the ECC process has been abandoned and,

Finding that this court's intervention would be highly intrusive, the court must balance the interests of Plaintiffs with the interests of the binational review system and the other participants involved in that review. See Ungaro-Benages v. Dresdner Bank AG, 379 F.3d 1227, 1238 (11th Cir. 2004). As mentioned above, Plaintiffs do have an interest in the timely and efficient adjudication of their claims. Nonetheless, if this matter is resolved by settlement, it may actually expedite Plaintiffs relief.[18] Moreover, if a settlement is reached, this may moot the ongoing ECC challenge rendering all efforts taken in connection therewith nugatory.

Perhaps more importantly, the judiciary has a strong interest in favoring the amicable resolution of disputes through settlement. See, e.g., Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982); Fed. R. App. P. 33. Given the importance of the issue to both the governments of Canada and the United States, and the important interests of other parties involved in this dispute in an amicable

---

therefore, a "Notice of Completion of Panel Review" has constructively been issued.

[18]There are several pending cases challenging various aspects of the binational review process, including the constitutionality thereof. See, e.g., Tembec, Inc. v. United States, 30 CIT ___, Slip Op. 06-109 (July 21, 2006); Coalition for Fair Lumber Imps. Executive Comm. v. United States, No. 05-1366 (D.C. Cir.) (challenging the constitutionality of the binational panel proceedings). Absent settlement, any one of these proceedings could delay resolution of this matter, even if the ECC affirms the panel in its review.

and final resolution of the controversy, there is a strong reason to allow the settlement discussions to proceed unhindered by the interference of U.S. courts.

The court is also mindful of the fact that the delay thus far (especially if measured from the time Plaintiffs filed the complaint) has not been substantial and that both governments appear to be attempting to negotiate in good-faith a resolution to this matter. Cf. Sumitomo Shoji Am., 457 U.S. at 185 (noting that courts must give respectful consideration to the opinions of the treaty partners). If this were a matter where the United States lost before a panel, appealed to an ECC, and then unduly obstructed or interfered with the proceedings before the ECC, cf. Medellin v. Dretke, 544 U.S. 660, 666 (2005) (noting that alternative state courts may provide relief), the result might be different, cf. Woodford v. Ngo, 548 U.S. ___, No. 05-416, Slip Op. at 20-21 (Mar. 22, 2006) (holding that an administrative procedure at issue was not so burdensome as to cast doubt on the Court's interpretation of an exhaustion requirement).[19]

Therefore, exercising the court's equitable discretion, the court declines to entertain Plaintiffs' request that the court

---

[19]Plaintiffs also raise a Fifth Amendment claim that they are being deprived of property without due process of law. Because the proceedings before the ECC have just been stayed, the court does not find this question ripe for review. See Dames & Moore v. Regan, 453 U.S. 654, 688-89 (1981) (Part V of the opinion).

order the USTR to appoint a member to the ECC, but rather abstains from proceeding with this matter because to do so would be to interfere with the NAFTA proceedings.

### CONCLUSION

For the foregoing reasons, the court **denies** Plaintiffs motion for expedited consideration, **grants** the Coalition's motion to intervene, and **grants** the Defendants' Coalition's motion to dismiss for lack of jurisdiction.

New York, New York
August 2, 2006

                                    /s/ Donald C. Pogue
                                   Donald C. Pogue, Judge